# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| ANTHONY CHANEY, on behalf of himself and a class of persons similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>DANIEL WADSWORTH, individually and as RONAN POLICE CHIEF; TREVOR WADSWORTH; KIM AIPPERSPACH, individually and as CITY OF RONAN MAYOR; CITY OF RONAN; CITY OF RONAN POLICE DEPARTMENT; and DOES 1-10,<br><br>        Defendants. | CV 14-177-M-DWM-JCL<br><br><br>FINDINGS AND RECOMMENDATION |

Before the Court are the following motions: (1) the parties' Fed. R. Civ. P.

56 cross motions for partial summary judgment; and (2) Defendants' motion to

deny Fed. R. Civ. P. 23 class certification.[1] For the reasons discussed, the Court

recommends that Defendants' motion for partial summary judgment be granted in

part, Plaintiff's motion for partial summary judgment be denied, and Defendants'

motion to deny class certification be granted in the context of the putative class

---

[1]Defendant Kim Aipperspach filed a motion for partial summary judgment in which all other Defendants joined. Defendant Trevor Wadsworth filed a motion to deny class certification in which the other Defendants joined.

definition and federal claim as presently asserted by Plaintiff Anthony Chaney.

## I. __Background__

On July 14, 2013, Plaintiff Anthony Chaney ("Chaney") and his brother, Donald Chaney ("Donald"), were at a bar in Ronan, Montana. According to Chaney, Donald, who is a military combat veteran with post-traumatic stress disorder (PTSD), experienced a PTSD anxiety attack or episode in the bar. Chaney moved Donald to a nearby park and held him down on the ground in an attempt to calm him.

Contemporaneously, the City of Ronan, Montana, Police Department received a report of a physical altercation occurring between two men outside a bar. Ronan Police Officers John Mitchell, Frank Swan, Matt Meyers, and Defendant Trevor Wadsworth responded to the dispatch. Upon arriving at the scene, the officers observed what appeared to be two individuals engaged in a fight. The officers proceeded to use physical force to separate and detain the two individuals. At some point Trevor Wadsworth physically restrained and handcuffed Chaney.

Minutes later, Flathead Tribal Officers also arrived at the scene.[2] Those officers were also involved in detaining and restraining both Donald and Chaney.

---

[2]The City of Ronan is located within the exterior boundaries of the Flathead Reservation.

The officers removed Wadsworth handcuffs from Chaney and placed their own handcuffs on him for approximately 45 minutes. The officers then gave Chaney a ride to his girlfriend's house.

Invoking federal question jurisdiction under 28 U.S.C. § 1331, Chaney advances claims under 42 U.S.C. § 1983 alleging Defendants, and in particular Trevor Wadsworth, arrested him without probable cause and with excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), Chaney also advances claims against the Defendants predicated upon their alleged violations of his Montana Constitutional and common law rights.

Central to Chaney's claims is his allegation that the City of Ronan has employed individuals to act as peace officers who are not properly trained and certified in accordance with Montana statutory law. And he asserts that at least one of the officers who effected his arrest – Trevor Wadsworth – was not properly certified or trained to serve as a peace officer at the time.

In view of the City of Ronan's purported use of uncertified and/or unqualified police officers, Chaney has filed this action as a class action under Fed. R. Civ. P. 23. Chaney proposes to define the putative class as follows:

> All persons whose person or property were subjected to Fourth
> Amendment search or seizure by Trevor Wadsworth or other

ineligible or unqualified peace officers acting and performing the
duties of City of Ronan police officers.

(Doc. 36 at 9.)

## II.    Procedural History

On October 23, 2014, the Court convened the Fed. R. Civ. P. 16 preliminary

pretrial conference and the parties addressed the threshold issue of whether the

City of Ronan complied with the various provisions of Montana law governing the

use, training, eligibility, qualifications and certification of peace officers.  The

parties agreed "that the Court should resolve as a matter of law the issue of

whether or not Defendant City of Ronan was allowing Defendant Trevor

Wadsworth to act as a reserve police officer on [July 14, 2013] in violation of

Mont. Code Ann. § 7-32-201[]" and other statutes establishing the requirements

for individuals to serve as peace officers.  (Doc. 34 at 3.)  The Court ordered the

parties to file cross motions for partial summary judgment upon the referenced

issue.

In their joint motion for partial summary judgment Defendants argue:  (1)

Trevor Wadsworth was properly trained, certified and empowered to act as a

reserve police officer at the time he arrested Chaney; and (2) The issue of whether

Wadsworth was in full compliance with all applicable training and certification

requirements imposed on reserve officers or full-time law enforcement officers

under Montana law, even if resolved in Chaney's favor, does not give rise to a claim under either 42 U.S.C. § 1983 or Montana law.

Chaney, in turn, moves for partial summary judgment seeking a declaration that the City of Ronan employed individuals – including Trevor Wadsworth – who were not trained, certified and used in accordance with controlling Montana statutory law. And he asks for injunctive relief enjoining the City from continuing this practice.

On the heels of the parties' cross motions for partial summary judgment, Defendant Trevor Wadsworth filed a motion to deny class certification in which all Defendants ultimately joined. The Defendants take the position that based upon the allegations of Chaney's Amended Complaint, he cannot meet the commonality and typicality requirements of Rule 23(a), nor the practical impairment, superiority and predominance requirements of Rule 23(a) and (b).

Chaney resists the motion to deny class certification. He contends the propriety of class certification is dependent upon resolution of the issue of whether the City's purported use of uncertified and untrained peace officers was unlawful in violation of Montana law. If so, Chaney asserts the various requirements of Rule 23 will necessarily be satisfied.

At the outset it is important to emphasize the narrow scope of the cross

motions for partial summary judgment and the motion to deny class certification. As noted, Chaney's definition of the putative class is predicated solely upon purported violations of federal law, i.e. the Defendants' violations of the putative class members' rights against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

At bottom, the parties' cross motions for partial summary judgment seek a determination as to whether the Defendants' alleged failure to comply with Montana statutory law governing the training and certification of peace officers rendered Chaney's arrest – as well as the arrests of putative class members by untrained or uncertified peace officers – unlawful under the Fourth Amendment. Chaney contends it is this common question of fact and law that warrants certification of the putative class.

Clarification on this point is necessary in order to cabin the sweeping language used by the Defendants in their motion for summary judgment.  For example, the Defendants repeatedly assert the alleged violations of Montana law regarding peace officers do "not give rise to a claim under [federal] *or state law*." (Doc. 43 at 2, 3, 6, and 9 (emphasis added).)  But Defendants have not presented any argument expressly addressing the merits of Chaney's state law claims of negligence, negligence per se and violations of the Montana Constitution.

Consequently, the Defendants' motion for partial summary judgment will not be construed as seeking judgment with respect to Chaney's state law claims.

## III.   Applicable Law - Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).  When presented with cross-motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the non-moving party the benefit of all reasonable inferences."  *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## IV.   Discussion

### A.      Montana Law – Reserve and Law Enforcement Officers

Montana law requires cities, towns, or municipalities to have a police department, but affords each of those entities the authority, within limits, to determine what officers it will employ to comprise the police force.  Mont. Code

Ann. §§ 7-32-4101 and 4106(1). A local government police force may be comprised of reserve officers (Mont. Code Ann. § 7-32-211), and fully qualified and certified full-time police officers. Reserve officers and full-time police officers are each subject to separate statutory requirements.

A "reserve officer" is defined under Montana law, in part, as a "part-time, volunteer member of a law enforcement agency" who may serve as a peace officer with arrest authority. Mont. Code Ann. § 7-32-201(6). Specific statutory qualification and training requirements are imposed upon reserve officers at Mont. Code Ann. §§ 7-32-213 and 214. But a reserve officer may lose the authority to perform law enforcement functions if the officer does not complete specific training requirements within 2 years of appointment. Mont. Code Ann. § 7-32-214(1).

A full-time employed law enforcement or peace officer is subject to separate qualification and training requirements imposed under Montana law. *See e.g.* Mont. Code Ann. § 7-32-303. Specifically, an employed peace officer must complete a specific training course certified by the Montana public safety officer standards and training council within 1 year of appointment. Mont. Code Ann. § 7-32-303(5)(a). An officer who fails to complete the required training course "forfeits the position, authority, and arrest powers accorded a peace officer in this

state[,]" (Mont. Code Ann. § 7-32-303(5)(a)), and is subject to termination from employment.  Mont. Code Ann. § 44-4-404.

Additionally, a city may not use reserve officers to supplant or reduce the full-time officers that it must employ.  Mont. Code Ann. § 7-32-212.  And reserve officers may only serve in a supplementary capacity, and must be supervised by a full-time law enforcement officer.  Mont. Code Ann. § 7-32-216(2) & (3).

As noted, Chaney claims Defendant Trevor Wadsworth and other officers were not eligible or qualified to serve as peace officers in the State of Montana because they did not satisfy the various requirements of Montana statutory law. Specifically, Chaney contends Wadsworth did not complete the required law enforcement training course, and was not certified by the Montana public safety officer standards and training council.  Chaney alleges that despite Wadsworth's lack of training and eligibility to serve as either a reserve officer or a law enforcement officer, the City of Ronan employed him, and other similarly ineligible and untrained individuals, as peace officers in Ronan in violation of Montana law.

Chaney argues that the Defendants' alleged violations of the referenced provisions of Montana law negated the uncertified officers' authority to arrest him and other similarly situated individuals.  From this premise, Chaney argues that his

arrest by these purportedly uncertified officers was per se unlawful and, therefore, in violation of his Fourth Amendment rights. Thus, he contends the alleged violations of Montana statutory law serve as the predicate for his § 1983 claims. But Chaney's position fails as a matter of law.

### B.     Chaney's Claims Under 42 U.S.C. § 1983

Count I of Chaney's First Amended Complaint advances claims under 42 U.S.C. § 1983. Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State [...], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. "To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (quotation and citation omitted).

Section 1983 serves to vindicate violations of federal Constitutional or statutory rights. Thus, "[s]ection 1983 requires [a plaintiff] to demonstrate a violation of federal law, not state law[,]" and the statute does not provide a cause of action for a violation of state law. *Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) and *Schlette v. Burdick*, 633 F.2d 920, 922 n.3 (9th Cir.

1980).  A state actor's conduct that results only in a violation of state law is not

sufficient to give rise to liability under Section 1983.  *Moreland v. Las Vegas

Metropolitan Police Department*, 159 F.3d 365, 371 (9th Cir. 1998).  The success

of a plaintiff's Section 1983 claim can be based only upon the merits of an alleged

violation of a federal Constitutional or statutory right.

The misguided practice of basing a Section 1983 claim upon a violation of

state law is common in part because state laws typically provide a greater level of

protection for individuals' rights than that which is provided under federal

Constitutional or statutory law.  *California v. Greenwood*, 486 U.S. 35, 43 (1988).

The Fourth Amendment, for example, protects citizens only "against unreasonable

searches or seizures[]" (U.S. Const. amend. IV), and compliance with the Fourth

Amendment is measured by standards of reasonableness applied in view of the

totality of the circumstances of a particular situation.  *Grady v. North Carolina*,

135 S. Ct. 1368, 1371 (2015).  In contrast, state law may impose further

limitations on a police officer's authority with respect to his or her search or

seizure conduct, such as when state law limits a law enforcement officer's

authority to arrest a citizen for certain misdemeanor offenses.  *Virginia v. Moore*,

553 U.S. 164, 166-67 (2008).  Plaintiffs, therefore, often attempt to assert a

Section 1983 claim based only on a violation of a more protective state law.

Nonetheless, it is well-settled that a police officer's violation of the more protective provisions of state law does not render the officer's search and seizure conduct unreasonable in violation of the Fourth Amendment – the state law protections do not alter either the search and seizure analysis, or the standards of reasonableness, required under the Fourth Amendment. *Moore*, 553 U.S. at 174. "The law of a particular state has never changed that reasonableness standard." *United States v. Brobst*, 558 F.3d 982, 990 (9th Cir. 2009) (rejecting the argument that seizures were constitutional only if performed in compliance with Montana law). The greater levels of protection of individuals' rights that may exist under state law are "exclusively [...] matters of state law." *Moore*, 553 U.S. at 171. Thus, "[t]o the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) (quotation and citation omitted).

Specific to law enforcement officers' conduct, the federal courts do not permit standards, limitations, or requirements imposed on officers under state law to serve as a measure for analyzing Constitutional claims. In *Moore* the Supreme Court rejected a proposed Fourth Amendment analysis which incorporates into the "constitutional calculus" the additional state law restrictions imposed on law

enforcement officers. *Moore*, 553 U.S. at 175-76. The Court concluded, in part, that such an incorporation analysis would cause Fourth Amendment protections to vary from place to place. *Id.* Thus, the Court held that a police officer's violation of a state law in making an arrest does "not alter the Fourth Amendment's protections" and does not, by itself, render the arrest unconstitutional under the Fourth Amendment. *Id.* at 176. *See also United States v. Laville*, 480 F.3d 187, 196 (3rd Cir. 2007) (holding that "the unlawfulness of an arrest under state or local law does not make the arrest unreasonable per se under the Fourth Amendment").

More specifically, a police officer's failure to comply with standard operating procedures and local training requirements does not constitute a federal constitutional violation and does not give rise to a claim for liability under Section 1983. *Mata v. City of Farmington*, 798 F. Supp. 2d 1215, 1230-31, 1234 (D.N.M. 2011) (citing cases concluding that a police officer's violation of state law or police procedure does not convert an otherwise constitutional arrest or use of force into a claim of a constitutional violation cognizable under Section 1983). "[E]vidence [of an officer's] violations of [standard operating procedures] and training is irrelevant to whether [plaintiffs'] rights under the Fourth Amendment were violated." *Id.* That evidence "does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore

irrelevant [to the issue of whether] Plaintiffs' arrest violated the reasonableness requirement of the Fourth Amendment." *Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005).

Desirable policy reasons exist which counsel against using state and local laws, procedures and requirements governing law enforcement officers as the grounds for Section 1983 claims. Those requirements serve "to encourage a high standard of public service, in excess of the federal constitutional minima." *Tanberg*, 401 F.3d at 1164. But if courts were to use those higher standards "as evidence of constitutional violations in damages actions under § 1983, [it] would create a disincentive [to police departments] to adopt progressive standards." *Id*. *See also Luckert v. Dodge County*, 684 F.3d 808, 819 (8th Cir. 2012) (noting that the use of local policies as evidence of per se constitutional violations would create an incentive to "not formalize policies at all").

Finally, with regard to state law licensing and qualification requirements imposed upon state actors, a violation of those requirements does not provide grounds for a Section 1983 action. In *Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001), state actors drew blood samples from the plaintiffs after they were arrested on suspicion of driving under the influence. Plaintiffs alleged that the individuals who drew their blood "were not licensed, qualified or permitted to draw blood or

handle syringes" as required under state law and, therefore, the search and seizure of their blood was conducted in violation of the plaintiffs' Fourth Amendment rights. *Ove*, 264 F.3d at 820, 824. But the court concluded that "[t]he plaintiffs' simple allegation that their blood was drawn by certain persons who were not among those authorized to do so by [state law], without more, does not state a constitutional claim[]" cognizable under Section 1983. *Id*. at 824. The plaintiffs had not alleged that the blood draws were conducted in an unreasonable manner in violation of their Fourth Amendment rights, and instead argued "only that the violation of [state law] constituted a per se unreasonable search" in violation of the Constitution. *Ove*, 264 F.3d at 825. The plaintiffs' theory failed as a matter of law.

For all of the foregoing reasons, Chaney's Section 1983 claims predicated solely upon Defendants' alleged violations of Montana law, without more, similarly fail as a matter of law.[3]

---

[3]Defendants maintain at one point in their opening brief that Trevor Wadsworth and the other officers had probable cause to arrest Chaney, and that they did not use excessive force in effecting Chaney's arrest. Defendants' arguments in this regard, however, are presented only in the context of their legal position that Wadsworth had authority to make a citizen's arrest under Mont. Code Ann. § 46-6-502 which requires the existence of probable cause and the use of reasonable force. But since the Court concludes that any alleged violation of Montana law cannot, without more, serve as the predicate basis for a Section 1983 claim, the Court need not address the issues of probable cause and reasonable force under Section 46-6-502 as presented in Defendants' motion.

Defendants advance an alternative argument to validate the City of Ronan police officers' authority they had during their encounter with Chaney. In view of the Flathead Tribal Officers' involvement with the subject incident, Defendants rely upon a "Renewal of Memorandum of Agreement" ("Renewal Agreement") extant between various state and local governmental entities, including the City of Ronan, which fall within the exterior boundaries of the Flathead Reservation, and the Confederated Salish and Kootenai Tribes of the Flathead Nation. (Doc. 44-14.) The purpose of this Renewal Agreement was to provide a framework within which the various law enforcement entities of the parties to the Renewal Agreement could cooperatively administer law enforcement on the Flathead Reservation. The Renewal Agreement permits Flathead Tribal Officers to grant authority to non-tribal officers to arrest a tribal member if necessary. Therefore, Defendants suggest Wadsworth was sufficiently authorized to arrest Chaney under the terms of the Renewal Agreement because he received authorization to do so by the Flathead Tribal Officers at the scene of Wadsworth's encounter with Chaney.

Chaney responds, in part, by asserting that the Renewal Agreement is limited in that it permits Flathead Tribal Officers to grant arrest authority to non-tribal officers only if the non-tribal officers "have met the necessary requirements for certification as law enforcement officers of the respective state, county, and

city jurisdictions and who have been certified by the respective jurisdiction[.]"
(Doc. 52-4 at 5.) Consequently, Chaney challenges Defendants' reliance upon the
Renewal Agreement by arguing that since Wadsworth was not properly certified
under Montana law to serve as a peace officer, then he did not qualify as a
certified officer to whom the Flathead Tribal Officers could grant arrest authority.
Thus, Chaney's position is similarly based upon Defendants' alleged violations of
Montana law regarding the training and certification requirements for peace
officers which are incorporated into the Renewal Agreement. But since the
alleged violations of Montana law cannot serve as the basis for a Section 1983
claim, the Renewal Agreement which incorporates those Montana laws also
cannot serve as a basis for a Section 1983 claim that is predicated upon the same
violations of Montana law.

Chaney next suggests in his final reply brief that the Renewal Agreement
gives rise to rights – the requirement that non-tribal officers arresting tribal
members be certified in their own jurisdictions – which he may enforce through a
Section 1983 claim by equating the Renewal Agreement to a federal treaty.
Chaney cites to *Romero v. Kitsap County*, 931 F.2d 624 (9th Cir. 1991) in support
of his theory. There the plaintiff sought to enforce rights guaranteed to them
under "The Stevens Treaties" entered between indian tribes and the United States

– a claim which was cognizable under Section 1983. *Id*., 931 F.2d at 626-27 n. 2 & 5. Similarly, Chaney relies upon *Confederated Tribes of the Colville Reservation v. Anderson*, 903 F. Supp. 2d 1187 (E.D. Wash. 2011) where the court concluded an individual plaintiff could bring a Section 1983 claim predicated upon a state actor's violation of the plaintiff's "federally-secured treaty hunting right" protected under a treaty entered between certain tribes and United States. *Id*., 903 F. Supp. 2d at 1198 and 1193.

Chaney's reliance upon the law discussed in *Romero* and *Anderson* is misplaced. The Renewal Agreement identified by the parties is not a federal treaty, or tantamount to federal law, which could give rise to a Section 1983 claim. To the contrary, the Renewal Agreement was entered between the Flathead tribes and the state and local governmental entities identified in the agreement. The United States is not a party to the Renewal Agreement and, therefore, it does not qualify as a treaty or federal law. Any purported violation of the Renewal Agreement could not form the basis of a Section 1983 claim.

### C.    Class Certification

Defendant Trevor Wadsworth moves the Court to deny certification of the putative class as defined by Chaney as a class action lawsuit under Fed. R. Civ. P. 23. The Court concludes Wadsworth's motion is well taken in the context of the

class as presently defined and the specific grounds for the federal class claim presently advanced.

Class certification is governed by Fed. R. Civ. P. 23 which requires that (1) there are numerous members of the putative class, (2) there are questions of law or fact common to the class, (3) the claims and defenses of representative parties are typical of those of all class members, and (4) the representative parties will fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

Chaney opposes Wadsworth's motion, and asserts class certification will be warranted once the Court resolves the parties' summary judgment motions. In particular, he contends the Rule 23 requirements of commonality, typicality, predominance of common questions, and the superiority of the class action vehicle will necessarily be satisfied with respect to his federal claim under the Fourth Amendment following the summary judgment resolution, in his favor, of the issue of whether the City's purported use of uncertified and untrained peace officers was unlawful under Montana law. (Doc. 70 at 16.)

As noted, the common question of fact and law which Chaney contends unites the putative class members is whether the arrests of the putative class members effected by City of Ronan peace officers who were ineligible or

unqualified to serve as peace officers were per se unlawful under Montana law and, therefore, in violation of the Fourth Amendment. (Doc. 36 at 9.) But as explained, Chaney's arguments suggesting that Defendants' alleged violations of Montana statutory laws governing the eligibility and training of peace officers cannot serve as a basis for a Fourth Amendment claim under 42 U.S.C. § 1983. Therefore, Chaney's foundation for class certification necessarily fails, and Wadsworth's motion to deny class certification should be granted.

## V.     Conclusion

Based on the foregoing, Chaney's arguments in this case asserting that Defendants violated various Montana statutory laws governing the eligibility, qualifications, training, certification, authority, and use of the police officers employed by the City of Ronan Police Department cannot, as a matter of law, serve as a predicate ground for his claims advanced under 42 U.S.C. § 1983. *See Johnson v. Pottawotomie Tribal Police Department*, 411 F. App'x 195, 197 (10th Cir. 2011) (unpublished disposition) (concluding that plaintiff's claims asserting that a law enforcement officer was ineligible as a matter of state law for certification as a law enforcement officer did not give rise to a Section 1983 claim). Therefore, IT IS RECOMMENDED that Defendants' summary judgment motion be GRANTED in this respect.

But IT IS FURTHER RECOMMENDED that the parties' motions seeking to establish either violations of, or compliance with, the various requirements under Montana law be DENIED in all other respects. The specific resolution of the legal merits of those issues of Montana law is, at this time, unnecessary for the resolution of any of Chaney's federal claims as presented and briefed in the parties' summary judgment motions. Those issues of Montana law, however, may be relevant with respect to some of Chaney's claims, such as his claim for the City of Ronan's liability under Section 1983, his claims under the Montana Constitution, and his claims for negligence and negligence per se. But those independent claims are not the subject of the parties' summary judgment motions. Thus, the issue of whether the disputed violations of Montana law give rise to any of Chaney's claims advanced under Montana law is beyond the scope of this recommendation.

IT IS ALSO FURTHER RECOMMENDED that Wadsworth's motion to deny class certification be GRANTED to the extent that Chaney presently seeks to pursue class certification for a legal claim under 42 U.S.C. § 1983 predicated upon violations of Montana law.

DATED this 19th day of May, 2015.

Jeremiah C. Lynch
United States Magistrate Judge