IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ANTHONY CHANEY, on behalf of himself and a class of persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL WADSWORTH, individually and as RONAN POLICE CHIEF; TREVOR WADSWORTH; KIM AIPPERSPACH, individually and as CITY OF RONAN MAYOR; CITY OF RONAN; CITY OF RONAN POLICE DEPARTMENT; and DOES 1-10,<br><br>Defendants. | CV 14-177-M-DWM-JCL<br><br><br>ORDER |

Before the Court is Defendants Kim Aipperspach and City of Ronan's

(collectively referred to as "City of Ronan") motion in limine to exclude

testimony, opinions, and statements which Plaintiff Anthony Chaney intends to

introduce through his expert witness, Timothy Longo, Sr., as set forth in Mr.

Longo's expert witness report. For the reasons discussed, the Court grants in part,

and denies in part, the City of Ronan's motion.

**I.     Background**

On July 14, 2013, Plaintiff Anthony Chaney ("Chaney") and his brother,

Donald Chaney ("Donald"), were at a bar in Ronan, Montana. According to

Chaney, Donald, who is a military combat veteran with post-traumatic stress

disorder (PTSD), experienced a PTSD anxiety attack or episode in the bar.

Chaney moved Donald to a nearby park and held him down on the ground in an

attempt to calm him.

Contemporaneously, the City of Ronan, Montana, Police Department

received a report of a physical altercation occurring between two men outside a

bar. Ronan Police Officers John Mitchell, Frank Swan, Matt Meyers, and

Defendant Trevor Wadsworth responded to the dispatch. Upon arriving at the

scene, the officers observed what appeared to be two individuals engaged in a

fight. The officers proceeded to use physical force to separate and detain the two

individuals. At some point Trevor Wadsworth physically restrained and

handcuffed Chaney.

Minutes later, Flathead Tribal Officers also arrived at the scene.[1] Those

officers were also involved in detaining and restraining both Donald and Chaney.

The officers removed Wadsworth's handcuffs from Chaney and placed their own

handcuffs on him for approximately 45 minutes. The officers then gave Chaney a

---

[1]The City of Ronan is located within the exterior boundaries of the Flathead
Reservation.

ride to his girlfriend's house.

Invoking federal question jurisdiction under 28 U.S.C. § 1331, Chaney advances claims under 42 U.S.C. § 1983, including allegations that Defendants, and in particular Trevor Wadsworth, arrested him without probable cause and with excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), Chaney also advances claims against the Defendants predicated upon their alleged violations of his Montana Constitutional and common law rights.

Central to Chaney's claims is his allegation that the City of Ronan has employed individuals to act as peace officers who are not properly trained and certified in accordance with Montana statutory law. And he asserts that at least one of the officers who effected his arrest – Trevor Wadsworth – was not properly certified or trained to serve as a peace officer at the time.

## II.    Discussion

The admissibility of expert opinion testimony is governed by Fed. R. Evid. 702 which provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In assessing the admissibility of expert witness opinion testimony under Rule 702 the district court must serve as a "gatekeeper" to ensure that the testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Expert testimony is subject to exclusion if it falls short of meeting either requirement. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007). The proponent of the expert's testimony bears the burden of establishing that the testimony is admissible. *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Rulings on the admissibility of expert testimony under Rule 702 are within the sound discretion of the trial court. *General Electric Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

That portion of Rule 702 requiring that expert testimony must assist the trier of fact "goes primarily to relevance." *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*, 509 U.S. 579, 591 (1993). The opinion must be sufficiently tied to the facts of the case to aid the trier of fact in resolving a disputed fact. *Id.* (citation omitted). The opinion must "fit" the facts of the case and serve a "helpful" purpose to the jury (*Daubert*, 509 U.S. at 591), and there must exist "a link between the expert's testimony and the matter to be proved." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quotation and citation omitted).

The reliability prong of the Rule 702 assessment requires that expert testimony be based on sound principles and methodology. The reasoning and methodology must be scientifically valid, and the court must assess whether it reasonably can be applied to the facts of the case. *United States v. W.R. Grace*, 455 F. Supp. 2d 1148, 1152 (D. Mont. 2006).

Finally, to be admissible under Fed. R. Evid. 702, an expert's opinion must be based on scientific, technical, or specialized knowledge. *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 502 (9th Cir. 1994). The Court must be satisfied that the expert arrived at particular "conclusions using scientific methods and procedures, and that those conclusions were not mere subjective beliefs or unsupported speculation." *Id. See also Millenkamp v. Davisco Foods International, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009).

The City of Ronan moves to exclude certain opinions of Mr. Longo, and

specific statements he has made in support of his opinions, all as set forth in Mr.

Longo's expert report. The specific opinions and statements are identified below.

## A.    Chaney's Detention - Contrary to Law Enforcement Practices

Mr. Longo's first opinion in his expert report states: "I am of the opinion to

a reasonable degree of professional certainty that the detention of Anthony Chaney

was contrary to generally accepted law enforcement practices at the time of this

incident." (Doc. 73-1 at ¶ 28.)  The substance of both this opinion and the

numerous paragraphs in Mr. Longo's expert report supporting this specific

opinion assert that the law enforcement officers on the scene of Chaney's arrest on

July 14, 2013, lacked probable cause to believe that Chaney had committed a

criminal offense and, therefore, lacked authority to effect Chaney's arrest.  Many

of Mr. Longo's statements merely recite the law of probable cause under both the

United States Constitution and Montana law.  Therefore, the City of Ronan objects

to the statements in paragraphs 36-42, 44, 46-48, and 67-72 of Mr. Longo's report

as expressions of law which an expert witness is not permitted to make.  The Court

agrees.

The specific paragraphs in Mr. Longo's report which the City of Ronan

identifies, and to which it objects, are as follows:

36. A police officer's authority to arrest or otherwise detain a free citizen has its origin in

the United States Constitution, and the cases that have interpreted its meaning.

37. It is generally accepted that for an arrest to be lawful, it must be supported by probable cause.

38. Probable Cause is, as the term implies, a concept that deals with probabilities.

39. "These are not technical, they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act."

40. Probable cause largely consists of "facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information and sufficient in themselves to warrant a man of reasonable caution to believe an offense has been committed."

41. "Probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules."

42. Ronan Police Department policy defines probable cause as "facts and circumstances" within the officer's personal knowledge or upon information imparted to him by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense.

44. It is important to note that not all interactions between a police officer and a free citizen trigger constitutional or even statutory protection. For example, casual and voluntary encounters need not be supported by probable cause6 or the lesser standard of reasonable suspicion which govern brief detentions that fail to rise to the level of a custodial arrest.

[...]

46. Under Montana law, "A private person may arrest another when there is probable cause to believe that the person is committing or has committed an offense and the existing circumstances require the person's immediate arrest. The private person may use reasonable force to detain the arrested person." The Ronan officers who detained Anthony Chaney were on duty and acting as police officers for Ronan within the jurisdiction of Ronan, not as private persons. Furthermore, the Retrocession Agreement delineates when a non-tribal officer may arrest or detain or use force against a tribal member. Only non-tribal officers who are certified peace officers may exercise this authority within the exterior bounds of the Flathead Reservation.

47. Whether or not reasonable suspicion or probable cause existed to warrant the

detention of Anthony Chaney falls squarely within the purview of the fact finder.

48. Whether or not the defendant's actions were contrary to generally accepted law enforcement principles at the time requires an examination of the facts; some of those facts remain in dispute, particularly as they relate to the actions of Donald and Anthony Chaney, as well as the actions of the Ronan officers.

[...]

67. Laws pertaining to Obstruction of Justice and Disorderly Conduct have their origin in the common law, and their implications on First Amendment rights are clear and have been the subject of legal opinions since the 1940s.

68. These particular statutes frequently trigger First Amendment issues and result in an analysis sought to determine how such issues, such as those as speech and assembly, are balanced against the government's need to carry out an important policing function.

69. The United States Supreme Court has required that for mere words to rise to the level of disorderly conduct there must be some evidence that people in substantial numbers would be provoked into some kind of physical action. The fact that an audience may take offense to certain words, actions, or expression of ideas is not a sufficient basis to quell First Amendment rights.

70. When those words, actions, or expression of ideas are directed towards a police officer, one who is trained to deal with unruly and uncooperative members of the public, the bar is set much higher. Typically, when such conduct has the likelihood of creating a violent response from the public, or creates an immediate breach of the public peace the provisions of a disorderly conduct statute will be satisfied. However, when the person from whom the expression comes is directing his or her language towards a police officer, courts will look closely to discern whether such language rises to the level of disorderly conduct or is merely the free expression of opinion.

71. "The rights of individuals to verbally oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."

72. But when an arrest occurs in the aftermath of such an exchange, that which verbally opposes or challenges police officers or the action they have undertaken, the question that immediately arises is whether the conduct sufficiently satisfied all of the elements of the relevant statute(s), or whether the arrest was a quick, spiteful, and oftentimes, poorly thought out response to "contempt of cop."

(Doc. 73-1 at ¶¶ 36-42, 44, 46-48, and 67-72.)

An expert witness may express an opinion with respect to an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a). An expert may not, however, "give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation and quotation omitted). *See also United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007). The resolution of "doubtful questions of law is the distinct and exclusive province of the trial judge." *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (quotation omitted). An expert's opinion is improper to the extent it directs a jury as to the result it should reach in making a decision. *Elsayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002). Further, "instructing the jury as to the applicable law 'is the distinct and exclusive province' of the court." *Hangarter*, 373 F.3d at 1016 (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)).

Therefore, to the extent Mr. Longo's expert report recites principles of, and instructs regarding, the law of probable cause and the legal procedure for determining probable cause, as identified in the City of Ronan's motion, his statements overstep the bounds of an expert's permissible testimony. The Court will instruct the jury as to the law of probable cause, the nuances of that law as it

9

relates to an individual citizen's freedom of speech and a citizen's "contempt of cop" conduct discussed by Mr. Longo (Doc. 73-1 at ¶¶ 73-86),[2] and whether specific matters relative to the issue of probable cause are questions of fact for the jury to resolve or questions of law upon which the Court will rule. The City of Ronan's motion is GRANTED to the extent Mr. Longo's expert report and testimony – set forth in ¶¶ 36-42, 44, 46-48, 67-86, and 73-86 in his expert report – purports to declare the scope of the law of probable cause for an arrest, and the application of the law of probable cause to the notion of "contempt of cop" which may influence a law enforcement officer to unlawfully arrest a citizen in the absence of probable cause.

The City of Ronan also moves in limine to exclude Mr. Longo's expert opinion statements regarding the purpose and importance of comprehensive and accurate police reports writing performed by law enforcement officers to document certain events. (Doc. 73-1 at ¶¶ 87-92.) Mr. Longo also declares in his report that he has not seen any police report documents which identify facts indicating that Chaney obstructed officers, committed any crime, or which give rise to probable cause to arrest Chaney. (Doc. 73-1 at ¶¶ 93-94, 99.) The City of

<hr />

[2]Paragraphs 73-86 of Mr. Longo's report are lengthy descriptions of the "contempt of cop" phenomenon, and a case example of where the phenomenon occurred. Due to their length, the Court will not quote those paragraphs herein.

Ronan urges that Mr. Longo's opinions relative to standards applicable to police report writing, and deficiencies in the police report documentation are irrelevant in this case. For the reasons discussed, the Court agrees.

The referenced paragraphs in Mr. Longo's expert report relative to issues regarding police report writing are as follows:

87. Law enforcement officers are trained to prepare reports that clearly, accurately, and completely describe the situations that they encounter during the course of their official duties and responsibilities.

88. I have personally instructed law enforcement officers in this regard in areas surrounding detention, arrest, and use of force.

89. "Reports generated by the police agency serve as a factual base for the entire criminal justice system."

90. Moreover, written reports serve as the police agency's historical record of an event. As such, those reports, which document witness' accounts, are critical for prosecutors and criminal defendants who rely on them in the criminal proceedings to ensure the proceedings are fair and just.

91. Not only do such reports memorialize an incident for posterity, those reports serve to recollect the memory of those fact witnesses that may be later called to testify in a criminal proceeding.

92. In fact, "a police report can be considered evidence if it is clear, concise, accurate, and representative."

93. I have reviewed no documents that, in my opinion, set out any facts or circumstances that support that Anthony Chaney obstructed those officers on the scene from truly performing their official duties.

94. I have reviewed no documents that, in my opinion, set out any facts or circumstances that support that Anthony Chaney was committing or had committed any crime when he was detained by the Ronan officers.

[...]

> 99. I have reviewed no documentation whatsoever that discloses any facts or circumstances that would cause a reasonable person to come to the conclusion that Anthony Chaney committed an offense that required his immediate arrest.

(Doc. 73-1 at ¶¶ 87-94, and 99.)

Rule 702 requires that an expert's testimony "must help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). This is a threshold issue the court must assess in determining whether the expert's opinion is admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).

The relevant facts at issue in this case are those that describe the City of Ronan law enforcement officers' conduct towards Chaney on July 14, 2013, which have probative value relative to Chaney's theories of liability. Thus, the law enforcement officers' alleged inability to properly prepare police reports subsequent to their encounter with Chaney is irrelevant to the facts of this case, and an expert opinion on that matter will not assist the jury in determining any fact at issue in this case.

Also, to the extent the police reports are deficient in that they do not identify facts which may have supported a finding of probable cause to arrest Chaney, Chaney is obviously free to question the law enforcement officers about the alleged absence of sufficient facts articulated in their reports. But testimony in the

form of an expert opinion is not necessary for the purpose of identifying facts that are missing from the police reports. The City of Ronan's motion is GRANTED in this respect.

The City of Ronan next moves to exclude Mr. Longo's statements in his expert report which address conduct committed by City of Ronan police officers towards Chaney's brother, Donald. (Doc. 73-1 at ¶¶ 95-98.) The City of Ronan argues the information in the referenced paragraphs would be relevant only to any legal claims Donald may have, but are irrelevant to Chaney's claims. The Court agrees in part.

The paragraphs of Mr. Longo's report to which the City of Ronan objects as relevant only to Donald are as follows:

> 95. Anthony Chaney testified that as he began to stand after being pulled from his brother, he observed 4-6 officers holding Donald on the ground as Trevor Wadsworth was delivering strikes with what appeared to be a flash light.
>
> 96. Anthony Chaney testified that at the time of his observations he continued to tell the officers that his brother had PTSD and that they (the officers) shouldn't be aggressive with Donald.
>
> 97. At some point, according to Anthony Chaney, he was approached by Trevor Wadsworth and threatened with arrest on the charge of obstruction, to which Mr. Chaney responded "I am telling you that he (Donald) has PTSD".
>
> 98. Anthony Chaney reports being told that he was under arrest and instructed to turn and place his hands behind his back. It was at that point that he was placed in handcuffs.

(Doc. 73-1 at ¶¶ 95-98.)

The City of Ronan's motion is GRANTED in part to the extent Mr. Longo's report at paragraph 95 recites facts describing the police officers' conduct towards Donald. Those facts, of course, are facts in this case on which Mr. Longo may rely in forming his opinion, but the facts need not be presented through the opinion testimony of Mr. Longo.

But, contrary to the City of Ronan's assertions, the Court finds that Mr. Longo's statements in paragraphs 96-98 do not describe the officers' conduct committed towards Donald, and the City of Ronan's motion is DENIED in this respect. The Court will defer final ruling on the relevance and admissibility of the matters in paragraphs 96-98 until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.

The City of Ronan moves to exclude Mr. Longo's statements in his expert report which are merely his comments on the evidence in this case. It identifies paragraphs 54, 59-61, and 65 as those which contain inappropriate comments. Those paragraphs read as follows:

54. At this point the defendants' version of events began to vary more significantly.

[...]

59. Nowhere in Officer Meyers' report does he indicate that Anthony Chaney was ever told to get up off of Donald.

60. Nor does his report articulate or otherwise describe that Anthony Chaney refused to

comply with any directive given to him by Meyers or anyone else on the scene.

61. What Officer Swan describes in his report narrative is noticeably different than that of Officer Meyers.

[...]

65. Nowhere in Officer Swan's report does he indicate what, if anything, Anthony Chaney did to obstruct his or other law enforcement officer's ability to perform a legitimate governmental function.

(Doc. 73-1 at ¶¶ 54, 59-61, and 65.)

The Court agrees and finds that the referenced paragraphs contain inappropriate expert witness "comments on the evidence or absence [of evidence]" as to particular matters and, therefore, are subject to exclusion under Rule 702 because they do not assist the trier of fact. *United States v. W.R. Grace*, 455 F. Supp. 2d 1148, 1159 (D. Mont. 2006). Chaney, of course, may present arguments as to what the evidence suggests, or what the absence of evidence suggests, as described in paragraphs 54, 59-61, and 65 of Mr. Longo's expert report, but he may not do so through Mr. Longo's expert witness testimony. The City of Ronan's motion is GRANTED in this respect.

The City of Ronan moves to exclude Mr. Longo's expert witness testimony set forth in his expert report as follows: "It is undisputed that at the time Anthony Chaney was detained by the Ronan officers, the Ronan officers were not certified, or trained, as law enforcement officers in the State of Montana." (Doc. 73-1 at ¶

45.)  It objects to this testimony on the basis that the extent of training and

certification required under Montana law for, and the actual training and

certification received by, the law enforcement officers who detained Chaney are

matters that are in fact disputed.  Chaney concedes that there exists disputes with

respect to the officer's training.  Therefore, the City of Ronan's motion is

GRANTED to the extent Mr. Longo's statement declares the matters

"undisputed."

B.    **Use of Force Against Chaney - Contrary to Law Enforcement Practices**

Mr. Longo's second formal opinion states as follows:  "I am of the opinion

to a reasonable degree of professional certainty that the use of force against

Anthony Chaney was contrary to generally accepted law enforcement practices at

the time of this incident."  (Doc. 73-1 at ¶ 29.)  The City of Ronan objects to

certain statements in Mr. Longo's expert report which he presents in support of the

quoted opinion.  Mr. Longo's report refers to crisis intervention training available

to law enforcement officers who deal with emotionally or mentally disturbed

individuals, the lack of sufficient treatment options available in communities for

those individuals, and the resulting increased number of encounters between law

enforcement officers and mentally or emotionally disturbed individuals.  (Doc. 73-

1 at ¶¶ 104-109.)  The City of Ronan argues the statements are subject to exclusion

as irrelevant because they do not "fit" the issues to be determined in Chaney's

claims.

The six referenced paragraphs in Mr. Longo's report to which the City of

Ronan objects read as follows:

> 104. Crisis Intervention Training (CIT) is another relevant area which has provided much guidance to law enforcement officers when dealing with emotionally disturbed persons and persons, such as Donald Chaney, who are experiencing mental health issues such as post-traumatic stress disorder.

> 105. Public beds for the mentally ill have continuously been decreasing since the Kennedy administration.

> 106. The absence of residential treatment options for the mentally ill has created an increased likelihood that a law enforcement officer will encounter someone in crisis during their tour of duty on any given day.

> 107. In fact, research suggests that seven to ten percent of police encounters will involve emotionally disturbed/mentally ill persons.

> 108. A 2006 report published by the Center for Problem Oriented Policing revealed that approximately 5 percent of persons in the United States suffer from a severe mental illness.

> 109. The need to ensure that law enforcement officers are properly trained to deal with emotionally disturbed persons exceeds the obvious.

(Doc. 73-1 at ¶¶ 104-109.)

Although the City of Ronan contends the statements in these paragraphs are

irrelevant to Chaney' claims, his claims include allegations that the City of Ronan

was negligent with respect to the training, or lack thereof, that it provided to its

law enforcement officers. Thus, standards of law enforcement training practices may be relevant to some portions of Chaney's claims. "To exclude evidence on a motion in limine 'the evidence must be inadmissible on all potential grounds.'" *Wood v. Montana Dept. of Revenue*, 2011 WL 4348301, at \*2 (D. Mont. Sept. 16, 2011) (quoting *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 (D. Mont. Oct. 26, 2010). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* Therefore, the City of Ronan's motion is DENIED as to the specific matters in paragraphs 104-109 of Mr. Longo's expert report. The Court will reserve final ruling on the relevance and admissibility of the statements in the context of the evidence presented at trial.

The City of Ronan further disagrees with, and objects to, the conclusion Mr. Longo intends to present in his second formal opinion, quoted above, concluding that Trevor Wadsworth improperly used force against Chaney. For the reasons discussed, the Court agrees that the substance of Mr. Longo's opinion is inadmissible with respect to Chaney's claim that Wadsworth used excessive force against him in violation of his rights under the Fourth Amendment to the United States Constitution.

The Fourth Amendment prohibits law enforcement officers from using "excessive force in the course of making an arrest," and the issue of whether the force was excessive is properly analyzed under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Mr. Longo's expert opinion concluding Wadsworth's use of force was contrary to law enforcement practices is equivalent to an opinion that the force was excessive or unreasonable.

Generally, an expert witness may not express an opinion as to the reasonableness or excessiveness of a law enforcement officer's use of force. Expert opinion testimony concluding the officer's conduct was "not justified," "not warranted," and "totally improper" expresses legal conclusions and "conclusory condemnations" of the officer's conduct, and merely instructs the jury as to the result it should reach. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2nd Cir. 1992). Furthermore, expert testimony concluding that an officer's use of force was "excessive" addresses a factual determination that is properly within the province of the jury and will not assist the jury in resolving that issue. *Robinson v. Delgado*, 2010 WL 1838866, *6-7 (N.D. Cal. 2010). Accordingly, Mr. Longo's opinion that Wadsworth's use of force was improper is an impermissible legal conclusion, and it will not assist the jury. The City of Ronan's motion is GRANTED in this respect as it pertains to Chaney's claim of excessive use of

force under the Fourth Amendment.

But, Chaney also advances a claim of negligence against Wadsworth for his use of force. Therefore, to the extent that any of Mr. Longo's statements offered in support of his ultimate opinion identify standards of law enforcement practices that are relevant to the use of force by a law enforcement officer and Chaney's negligence claim, then Mr. Longo's statements may be relevant and admissible. Therefore, the City of Ronan's motion is DENIED in this respect. The Court will reserve final ruling on the relevance and admissibility of specific statements in the context of the evidence presented at trial.

### C. Failure to Train and Certify - Contrary to Law Enforcement Practices and Causation for Chaney's Claims

Mr. Longo's third formal opinion is as follows:

> I am of the opinion to a reasonable degree of professional certainty that the practice of failing to ensure the proper law enforcement training and certification of its police officers was contrary to generally accepted law enforcement practices at the time of this incident, and that this failure to train and certify caused the officers to escalate, rather than de-escalate the situation, detain and arrest Anthony Chaney, and use force against Anthony Chaney.

(Doc. 73-1 at ¶ 30.)

The City of Ronan moves to exclude certain statements in Mr. Longo's expert report which he made in support of his third opinion quoted above. In

particular, the City of Ronan objects to Mr. Longo's statements in paragraphs 125, 132, 134 and 135 of his expert report on the ground that the statements impermissibly express conclusions of law. Those paragraphs state as follows:

> 125. An agency that fails to train officers for recurring tasks that law enforcement officers face may be liable for failing to train the officers, where the lack of training or poor training foreseeably leads to a constitutional violation.
>
> [...]
>
> 132. The State of Montana is no different. It requires that those hired as law enforcement officers meet certain standards to ensure their fitness for duty and the ability to carry out those duties properly.
>
> [...]
>
> 134. It is further undisputed that the City, with the knowledge of both the Mayor and the Chief of Police, deployed those officers to perform the function of a law enforcement officer in the City of Ronan absent any basic law enforcement training as mandated by Montana Law and as provided by the Montana Law Enforcement Academy.
>
> 135. While it may be argued that Trevor Wadsworth attended basic law enforcement training before it was discovered that he didn't comply with the minimum compulsory requirement of being an employee of the city, he failed to complete the academy and thus failed to receive the proper law enforcement officer's certification.

(Doc. 73-1 at ¶¶ 125, 132 and 134-135.)

The Court agrees that Mr. Longo's statement in paragraph 125 recites principles of law which impose liability upon a governmental law enforcement agency for failing to train its officers where the failure caused a violation of a citizen's constitutional rights. Additionally, Mr. Longo's statement in paragraph 132 recites Montana law which requires law enforcement officers to meet certain

21

standards. An expert witness may not testify as to conclusions of law, instruct the jury as to any statement of law to be applied in the case, or provide an interpretation of what a particular statute requires – tasks that are exclusively reserved for the court. *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) and *United States v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001). The City of Ronan's motion is GRANTED with respect to paragraps 125 and 132.

The Court disagrees, however, that the statements in paragraphs 134 and 135 express conclusions or statements of law. Therefore, the City of Ronan's motion is DENIED in this respect. The Court reserves the final ruling as to the relevance and admissibility of the statements in these paragraphs depending on the context of the evidence presented at trial.

The City of Ronan further objects to the statements in paragraphs 134 and 135 on the ground that they are irrelevant. It argues the statements ignore the possibility that the law enforcement officers deployed by the City of Ronan, including Trevor Wadsworth, may qualify as "reserve officers" as defined under Montana law and, therefore, may not be subject to the training and certification compliance requirements referenced in the two paragraphs. Therefore, the City of Ronan argues the statements are incorrect and irrelevant to the facts of this case.

The Court finds that the issue of whether the law enforcement officers employed by the City of Ronan qualify as "reserve officers" involve factual and legal issues which remain to be resolved in this case. Therefore, the issue of whether Mr. Longo's statements in paragraphs 134-135 are relevant and admissible in this case is reserved for final ruling in the context of the evidentiary and legal rulings issued at the time of trial. The City of Ronan's motion is DENIED in this respect.

The City of Ronan further objects to Mr. Longo's statements in paragraphs 136 and 137 of his report on the ground it believes they are improper comments on the evidence. In paragraph 136 Mr. Longo states the following: "In his Findings of Fact and Conclusions of Law memorandum, the POST Hearing Officer *properly* stated the following: [...]" (Doc. 73-1 at ¶ 136 (emphasis added).) The statement then proceeds to quote the POST Hearing Officer's opinion as to the consequences of deploying untrained, uncertified, and unqualified law enforcement officers.

The Court agrees that Mr. Longo's statement in paragraph 136 "merely comments on the evidence[,]" and "is excludable under Rule 702 because it does not assist the trier of fact[.]" *United States v. W.R. Grace*, 455 F. Supp. 2d 1148, 1159 (D. Mont. 2006). The jury in this case can decide for itself whether the

POST Hearing Officer properly identified the consequences of the use of untrained law enforcement officers. The City of Ronan's motion is GRANTED in this respect.

In paragraph 137 of his expert report, Mr. Longo states as follows: "[T]he City of Ronan and its Chief of Police subjected the citizens of Ronan to a foreseeable risk of constitutional harm by permitting untrained, uncertified, and unqualified persons to carry out the duties of a sworn law enforcement officer." (Doc. 73-1 at ¶ 137.) The City of Ronan moves to exclude this statement asserting it is an impermissible comment on the evidence.

The Court finds the statement in paragraph 137 is a comment. Mr. Longo may be qualified to express an opinion as to the consequences of the use of untrained law enforcement officers as a general proposition. But by specifically opining that the City of Ronan and Chief Wadsworth did in fact subject citizens to a forseeable risk of constitutional harm, Mr. Longo is commenting directly on the disputed issue of fact of whether the officers were adequately trained. Thus, Mr. Longo's opinion as framed is inadmissible and the City of Ronan's motion is appropriately GRANTED.

**D.** **Failure to Investigate and Discipline Chief Wadsworth Regarding Falsified Record - Contrary to Law Enforcement Practices**

The City of Ronan moves to exclude Mr. Longo's fourth opinion which states as follows:

> I am of the opinion to a reasonable degree of professional certainty that the City of Ronan's failure to investigate and take preliminary personnel action upon learning of the allegations that Chief Wadsworth had willfully falsified a record was contrary to generally accepted law enforcement practices at the time of this incident.

(Doc. 73-1 at ¶ 30.) It objects to this opinion on the ground it is not relevant to Chaney's constitutional claims under 42 U.S.C. § 1983 alleging his arrest was effected without probable cause and with excessive force.

It is true that the quoted opinion may not be relevant to Chaney's constitutional claims arising from the circumstances specific of his arrest on July 14, 2013. But Chaney contends the opinion will be relevant to his claims of negligence, and the Court agrees. In view of the negligence claims, the Court cannot conclude that the opinion is inadmissible for all purposes and on all potential grounds. *Wood v. Montana Dept. of Revenue*, 2011 WL 4348301, at *2 (D. Mont. Sept. 16, 2011) (quoting *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 (D. Mont. Oct. 26, 2010). A final ruling on the admissibility of the quoted opinion is deferred until trial so that questions of

foundation, relevancy and potential prejudice may be resolved in proper context.

Therefore, the City of Ronan's motion is DENIED with respect to Mr. Longo's fourth opinion.

**E.**     **Chief Wadsworth and Mayor Aipperspach's Failure to Comply with Montana Law Requiring Employment and Compensation of Persons Attending Basic Law Enforcement Training - Contrary to Law Enforcement Practices**

Mr. Longo's fifth opinion set forth in his expert report reads as follows:

> I am of the opinion to a reasonable degree of professional certainty that Chief Wadsworth and Mayor Aipperspach's failure to comply with the provisions of Montana Law requiring both employment and compensation of persons attending basic law enforcement training was contrary to generally accepted law enforcement practices at the time of this incident.

(Doc. 73-1 at ¶ 32.)  The City of Ronan moves to preclude Mr. Longo from expressing this opinion at trial on the ground it is not relevant to Chaney's claims alleging his arrest was effected without probable cause and with excessive force. Specifically, it argues the opinion is not relevant to Chaney's claims advanced under 42 U.S.C. § 1983.

In terms of the opinion's relevance to Chaney's section 1983 claims, the Court agrees.  The opinion has no probative value as to the issues of whether probable cause existed warranting Chaney's arrest, or whether the law enforcement officers used excessive force in making his arrest.

26

Furthermore, the Court finds it is doubtful that the opinion has any relevance to Chaney's negligence claims or his other section 1983 claims. Whether an officer was employed and compensated by the law enforcement agency that sponsored the officer's attendance at the basic law enforcement officer training program would likely have no probative value with respect to the issue of whether any Defendant's specific conduct directed to, or affecting, Chaney caused him any harm or violated his constitutional rights. But, the Court will reserve ruling on the issue of the opinion's relevance for the presiding Judge in the context of the evidence and issues presented at trial. Therefore, the City of Ronan's motion is DENIED in this respect.

The City of Ronan also moves to exclude at least a portion of Mr. Longo's fifth opinion in that it offers speculation as to a person's state of mind. Specifically, the City of Ronan objects to Mr. Longo's statement opining that "[b]oth Chief Wadsworth and Mayor Aipperspach were either ignorant of the law or simply chose to ignore it. It is not for me to conclude which is the more accurate." (Doc. 73-1 at ¶ 173.)

One of the threshold requirements for the admissibility of expert opinion testimony under Rule 702 is that the "expert's scientific, technical, or other specialized knowledge" must constitute something "more than subjective belief or

unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509

U.S. 579, 590 (1993). Thus, where an expert fails to demonstrate that a particular

opinion is more than a mere subjective belief, unsupported speculation, or a bald

conclusion, the opinion is subject to exclusion under Rule 702. *Claar v.*

*Burlington Northern Railroad Company*, 29 F.3d 499, 502 (9th Cir. 1994);

*Flagstone Development, LLC v. Joyner*, 2011 WL 5040663, *2 (D. Mont. 2011).

Here, Mr. Longo's opinion that Chief Wadsworth and Mayor Aipperspach

were either ignorant of, or consciously chose to ignore, the law requiring

employment of, and compensation to, law enforcement officers sent for training is

merely his subjective belief, or speculation. Therefore, Mr. Longo's opinion

statements in paragraph 173 of his expert report are subject to exclusion, and the

City of Ronan's motion is GRANTED in this respect.

### F. Trevor Wadsorth was Performing Duties of Sworn Law Enforcement Officer Without Training and Qualifications - Contrary to Law Enforcement Practices

In his sixth opinion, Mr. Longo states as follows:

I am of the opinion to a reasonable degree of professional certainty that
Trevor Wadsworth was not performing the duties of a reserve officer but
was performing the duties of a sworn law enforcement officer absent the
requisite training and qualifications, and therefore acting contrary to
generally accepted law enforcement practices.

(Doc. 73-1 at ¶ 33.)

The City of Ronan asserts the opinion quoted above is inadmissible because it presents a conclusion of law suggesting that Trevor Wadsworth was not a "reserve officer" as defined under the provisions of Mont. Code Ann. § 7-32-201(6) and, therefore, was required to meet certain training and qualification requirements.

The Court agrees that to the extent that Mr. Longo's opinion constitutes an interpretation and application of the legal definition of a "reserve officer" under Montana law, the opinion is inadmissible. "The proper interpretation of a statute is a question of law[]" for the Court to resolve. *United States v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001). And, a statement as to whether an individual violated a specific statutory provision is an opinion on a legal conclusion which an expert witness is not permitted to give. *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1059-60 (9th Cir. 2008). Thus, the City of Ronan's motion is GRANTED in this respect.

The City of Ronan next objects to Mr. Longo's statements in paragraphs 200, 206 and 210 of his expert report on the ground they are speculative. Those three paragraphs read as follows:

> 200. Although the Police Officer Standards and Training Council had previously deemed Trevor Wadsworth ineligible to serve as a peace officer in the State of Montana, the City of Ronan permitted him to continue to enjoy the same powers, rights, privileges, obligations, and duties of any other Montana law enforcement officer. They did so

without ensuring that Trevor Wadsworth was properly trained to perform his duties.

[...]

206.  Montana Law clearly set out the standards applicable to the hiring and training of peace officers in the State of Montana. I am of the opinion based on the materials that I have reviewed that both Chief Wadsworth and the City of Ronan were aware of the applicable law and chose to ignore it.

[...]

210.  By the Chief's own admission, not only did Trevor never undergo the state mandated training for basic law enforcement, he was never under the supervision of a field training officer when deployed in the City of Ronan.

(Doc. 73-1 at ¶¶ 200, 206 and 210.)  The City of Ronan, however, does not identify any specific statement within these three paragraphs which it asserts is speculative.

Nonetheless, the Court agrees that Mr. Longo's statement asserting that Chief Wadsworth and the City of Ronan "chose to ignore" the Montana laws applicable to the hiring and training of peace officers is, without more, speculative and inadmissible.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).  The City of Ronan's motion is GRANTED in this respect.  But because the City of Ronan does not identify specifically what is speculative about the balance of the three above-quoted paragraphs, the Court does not find they are, in fact, speculative.  Thus, the City of Ronan's motion on the ground of speculation is otherwise DENIED subject to a final ruling as to admissibility in the

context of the evidence presented at trial.

The City of Ronan opposes Mr. Longo's statements in paragraphs 207 and 208 as improper comments on the evidence. In paragraph 207, Mr. Longo opines that Chief Wadsworth and the City of Ronan's conduct in employing peace officers without complying with hiring and training requirements thereby "placed the citizens of Ronan at a foreseeable risk of Constitutional harm by allowing persons to perform the duties and responsibility of a peace officer without the proper and state mandated training." (Doc. 73-1 at ¶ 207.) As previously discussed in regard to paragraph 137 of Mr. Longo's expert report, the Court finds the statement is a comment on the evidence. The City of Ronan's motion is GRANTED in this respect.

In paragraph 208, Mr. Longo opines that "Chief Wadsworth's utter disregard for the importance of training, and specifically as that training pertained to Trevor, is evidenced by his deposition testimony." (Doc. 73-1 at ¶ 208.) The Court agrees that this statement is a comment on the evidence and the content of Chief Wadsworth's deposition testimony. Therefore, the statement is inadmissible, and the City of Ronan's motion is GRANTED in this regard.

Finally, the City of Ronan argues that Mr. Longo's sixth opinion quoted above is not relevant to Chaney's claims under 42 U.S.C. § 1983 and, therefore, is

inadmissible.  Although the Court agrees the opinion may be irrelevant to the section 1983 claims alleging the officers arrested Chaney without probable cause and with the use of excessive force, the Court cannot agree it is not relevant to Chaney's claims of negligence, or other section 1983 claims.  The ultimate determination as to the relevance of the opinion is deferred until trial to be made in the proper context of the evidence presented at trial.  Therefore, the City of Ronan's motion is DENIED in this respect.

### G.    Chief Wadsworth's Failure to Supervise - Contrary to Law Enforcement Practices

In his seventh opinion Mr. Longo states the following: "I am of the opinion to a reasonable degree of professional certainty that Chief Wadsworth's Failure to Supervise officers under his direction was contrary to generally accepted policing practices at the time of this incident."  (Doc. 73-1 at ¶ 34.)

The City of Ronan moves to exclude specific statements made by Mr. Longo in paragraphs 212-218 of his expert report presented in support of his seventh opinion.  The City of Ronan asserts the statements present legal opinions or conclusions.  Those paragraphs are as follows:

212. The means by which a department could become aware of practices which depart from policy, training, and law rests with supervisors within the organization; perhaps this is the most practical and immediate of management tools.

213. In my 34 years of policing, I have found supervision to be a highly effective

mechanism of mitigating risks of exposure within a law enforcement organization. With regard to the first line supervisor, and even the watch command level, both are extremely instrumental in the daily oversight and management of line personnel and the services they provide to our citizens.

214. In a department the size of the Ronan Police Department, the first line supervisor on the street is oftentimes the Chief of Police.

215. The City of Ronan and Chief Wadsworth have taken the position that Meyers, Swan, and Wadsworth were "reserve officers' employed by the Ronan Police Department.

216. If that is determined to be the case, I am of the opinion that the manner in which those officers were supervised on the morning of July 13, 2013, was contrary to 7-32-216, MCA, which requires that a reserve officer be supervised by a full-time law enforcement officer whose span of control would be considered within reasonable limits.

217. Chief Wadsworth would interpret that span of control to mean that a reserve officer is supervised properly if a full-time law enforcement officer is anywhere within the City of Ronan.

218. Law enforcement officers make split second decisions oftentimes under circumstances that are tense, uncertain, and rapidly evolving. The very fact that these particular officers lacked the formal training mandated to carry out the duties of a Montana law enforcement officer required that they be more closely supervised in order to effectively monitor the performance of their duties.

(Doc. 73-1 at ¶¶ 213-218.)

The Court finds that the only opinion improperly expressing a conclusion of law or legal opinion is in paragraph 216 where Mr. Longo asserts the supervision of the officers was conducted contrary to Mont. Code Ann. § 7-32-216. This statement contends the City of Ronan and its supervising police officers violated a specific statutory provision and, thus, constitutes an opinion on a legal conclusion which an expert witness is not permitted to give. *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1059-60 (9th Cir. 2008). Thus,

the City of Ronan's motion is GRANTED as to that portion of paragraph 216. But the City of Ronan's motion challenging legal conclusions asserted in paragraphs 213-218 is otherwise DENIED since they do not contain legal conclusions.

The City of Ronan further objects to paragraphs 215-220 of Mr. Longo's expert report on the basis that the statements are not relevant to Chaney's claims alleging his arrest was effected without probable cause and with excessive force. Following paragraphs 215-218 above, paragraphs 219 and 220 state as follows:

> 219. In this particular case, I have reviewed no documentation with regard to what, if any, training these officers received to prepare them for their work and particularly as it related to dealing with people like Donald Chaney who was in crisis at the time he encountered these officers.
>
> 220. Even if one were to agree with Chief Wadsworth's interpretation as to the reasonable limits of the span of control over his officers, I have reviewed nothing that evidences that he carried out his affirmative duty to properly train his officers in those areas where the need to train is obvious; detention, arrest, use of force, and dealing with people are emotionally disturbed or in crisis.

(Doc. 73-1 at ¶¶ 219-220.)

The Court finds that although the statements in paragraphs 215-220 may not be relevant to Chaney's claims that the officers lacked probable cause to arrest him, and used excessive force during the arrest, the statements in these paragraphs may be relevant to Chaney's claims of negligence, or other section 1983 claims, and the Court cannot conclude the statements are inadmissible for all purposes and on all grounds. The City of Ronan's motion is DENIED in this respect. The Court

will defer a final ruling on the relevance and admissibility of the statements in the context of the evidence as presented at trial.

The City of Ronan next moves to exclude Mr. Longo's statements in paragraphs 221-224 on the ground they do not fit, or are irrelevant to, Chaney's claims under 42 U.S.C. § 1983. Paragraphs 221-224 read as follows:

> 221. It is wholly consistent with generally accepted policing practices for officers who have received basic law enforcement training to enter into a Field Training Program under the direct supervision of a Field Training Officer. Typically these programs last twelve (12) weeks which amounts to some 480 hours of additional training.
>
> 222. During the entire duration of this program, the new trained officer is never alone. Every single task the officer performs is supervised by his or her Field Training Officer.
>
> 223. Those tasks are documented, reviewed, and remediated if necessary.
>
> 224. It is only after successfully completing this additional 12 weeks of practical training that the officer is permitted to police on his own.

(Doc. 73-1 at ¶¶ 221-224.)

The Court finds that Chaney's claims include claims of negligence to which Mr. Longo's statements in paragraphs 221-224 may be relevant, even if they are not relevant to some of the section 1983 claims. Therefore, the referenced statements are not inadmissible for all purposes and on all grounds, and the City of Ronan's motion is DENIED in this respect. The Court will defer a final ruling on the relevance and admissibility of the statements in the context of the evidence as presented at trial.

Finally, the City of Ronan moves to exclude Mr. Longo's statement in paragraph 225 as follows:

> 225. In effect, what the City of Ronan and Chief Wadsworth has done in this case is unleash on their citizens people who lack the training and certification as a law enforcement officers and supervise the untrained officers' daily tasks from a distance that would preclude them from promptly intervening in the event one or more of those officers acted contrary to policy, law, or generally accepted policing practices.

(Doc. 73-1 at ¶ 225.) The City of Ronan asserts the statement is inadmissible because it constitutes "gratuitous speculation and subjective belief." (Doc. 73 at 12.)

The Court agrees that Mr. Longo's statement in paragraph 225 constitutes speculation or subjective belief, and would be a direct and impermissible comment on the evidence. Therefore, the City of Ronan's motion is GRANTED in this respect.

### H.     Hiring Practices - Contrary to Law Enforcement Practices

The City of Ronan moves to exclude Mr. Longo's eighth opinion, and the numerous supporting statement paragraphs set forth in his expert report. Mr. Longo's eight opinion is as follows: "I am of the opinion to a reasonable degree of professional certainty that the hiring practices of the City of Ronan Police Department was contrary to generally accepted policing practices at the time of this incident." (Doc. 73-1 at ¶ 35.) The City of Ronan argues the opinion and

supporting statement are not relevant to the demanding standard for liability under 42 U.S.C. § 1983 and *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) that can be imposed against a local governmental entity where the plaintiff alleges the entity was deliberately indifferent to a plainly obvious consequence of failing to properly screen prospective law enforcement employees.

While the Court agrees that the eighth opinion and supporting statements may not be sufficient to impose liability against the City of Ronan under section 1983 based on its alleged negligent decision to hire Trevor Wadsworth, the City of Ronan again ignores Chaney's claims of negligence plead in this action. Mr. Longo's opinion may be relevant to Chaney's claim that the City of Ronan was negligent in the course of its conduct in hiring and employing Trevor Wadsworth. Therefore, the Court cannot agree Mr. Longo's eighth opinion is inadmissible for all purposes and on all grounds, and the City of Ronan's motion is DENIED in this respect. The Court will defer final ruling on the admissibility of Mr. Longo's eighth opinion and supporting statements in the context of the evidence as presented at trial.

IT IS SO ORDERED.

DATED this 15th day of July, 2015.

Jeremiah C. Lynch
United States Magistrate Judge