IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ANTHONY CHANEY, on behalf of himself and a class of persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL WADSWORTH, individually and as RONAN POLICE CHIEF; TREVOR WADSWORTH; KIM AIPPERSPACH, individually and as CITY OF RONAN MAYOR; CITY OF RONAN; CITY OF RONAN POLICE DEPARTMENT; and DOES 1-10,<br><br>Defendants. | CV 14-177-M-DWM-JCL<br><br><br>FINDINGS AND RECOMMENDATION |

Before the Court are the Fed. R. Civ. P. 56 motions for summary judgment filed by each Defendant requesting dismissal of Plaintiff Anthony Chaney's claims under both federal and state law. For the reasons discussed, the Court recommends the motions be granted and this action be dismissed.

## I. Introduction

On July 14, 2013, police officers in the City of Ronan, Montana were summoned to address what they were told was a "fight" occurring between Plaintiff Anthony Chaney ("Chaney") and his brother, Donald Chaney ("Donald").

1

The officers physically separated the brothers, detained or arrested Chaney, and placed him in handcuffs.

Chaney advances claims under 42 U.S.C. § 1983 alleging Defendants, and in particular Defendant Officer Trevor Wadsworth, arrested him without probable cause and with excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. And invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), Chaney also advances claims against the Defendants predicated upon their alleged violations of his Montana constitutional and common law rights.

## II. Applicable Law

### A. Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation

omitted).

A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either: (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence to ultimately carry his burden at trial with respect to an essential element. *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and identify through affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue [of material fact] for trial." *Celotex Corp. v. Cattret*, 477 U.S. 317, 324 (1986). The non-moving party must identify sufficient evidence that would allow a reasonable fact-finder to find in his favor. *Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1287 (9th Cir. 2000).

The summary judgment procedures do not permit the court to weigh the evidence or make credibility determinations, and the court must construe all facts in the light most favorable to the non-moving party. *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009) (citation omitted).

## B.    Application of Montana Law

Because the Court possesses supplemental jurisdiction over Chaney's claims advanced under Montana law, it "is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).  "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).

## III.    Factual Background

In the early morning hours on July 14, 2013, Chaney and his brother, Donald, were at a bar in Ronan, Montana.  Chaney and Donald had consumed alcohol, and Donald agreed he was "heavily intoxicated."  According to Chaney, Donald is a military combat veteran who suffers from post-traumatic stress disorder (PTSD), and Donald experienced a PTSD anxiety attack or episode while at the bar.  Chaney moved Donald to a nearby park and held him down on the ground in an attempt to calm him.  Donald was tense, crying, upset, screaming, and flailing his arms.  Chaney, who is approximately 6'2" tall and weighing 240 pounds, was trying to control his smaller brother, but asserts the two were not

fighting.

Around 2:00 a.m., City of Ronan Police Officer Matt Meyers received a call informing him "there was a fight behind the Second Chance Bar." (Doc. 104-5 at 3 of 8.) Officer Meyers reported the fight to Ronan Police Officers Frank Swan and Trevor Wadsworth on the radio. (*Id*.) Officer Wadsworth also received a phone call informing him there were two guys "fighting" near the bar. (Doc. 104-4 at 2 of 5.) Finally, dispatch personnel reported to the officers on the radio there was a "fight behind the Second Chance Bar." (Doc. 132-1 at 14 of 22.)

When Officer Meyers arrived at the scene he observed a larger man on top of, and holding down, a smaller man. The smaller man "was screaming that he was going to kill himself, that he was going to kill everybody, [and he was] very upset." (Doc. 104-5 at 3 of 8.) Chaney informed Officer Meyers the man he was holding down was his brother, that Donald had PTSD and was having an anxiety or PTSD episode, and that Chaney was trying to prevent Donald from hurting himself or anyone else. (*Id*.) According to Officer Meyers, Chaney was effectively restraining Donald, Donald was not harming anyone, and Chaney did not expressly ask for help holding Donald down. (Doc. 104-5 at 4 of 8.)

When Officers Swan and Wadsworth arrived at the scene moments later, they observed Chaney on top of Donald. And to them it appeared the two men

were fighting – with Donald flailing his arms and legs, and screaming that he was going to kill everyone. (Doc. 104-4 at 2 of 5; Doc. 132-5 at 4 of 21.)

Officers Meyers and Swan told Chaney they needed to put Donald in handcuffs for everyone's safety. (Doc. 104-5 at 4 of 8; Doc. 104-4 at 3 of 5.) Officers Swan and Wadsworth told Chaney he needed to get off of Donald, but Chaney did not do so.[1] (Doc. 104-4 at 3 of 5; Doc. 132-5 at 4 of 21.)

Officer Meyers then saw Officer Wadsworth "get on top of" Chaney and try to handcuff Donald, but Donald was struggling. (Doc. 104-5 at 5 of 8.) Officer Swan then "jumped on as well[.]" (*Id*.) Thus, Donald was lying on the ground, Chaney was on top of Donald, and Officers Wadsworth and Swan were on top of both Chaney and Donald. (*Id*.)

------

[1]In his Statement of Disputed Facts, Chaney asserts that "none of the officers told [Chaney] to get up." (Doc. 136 at 3 of 4 (citing to Chaney's deposition at page 100, lines 4-5.)) But this assertion conflicts with Chaney's referenced testimony which is, at best, equivocal. Page 100 of Chaney's deposition reflects that he was testifying about events that occurred after the officers pulled him off Donald while he was approximately 6 or 8 feet away from Donald and the officers. (Doc. 104-1 at 12 of 19.) Chaney testified it was at that time, "after [an officer] grabbed me and ripped me off, I didn't know what was going to happen. I didn't know who it was. No one said anything." (Doc. 104-1 at 12 of 19, Chaney Depo. at 100:3-5.) This testimony neither expressly nor affirmatively asserts that the officers did not direct him to get off Donald. At best, his testimony suggests only that the officers did not say "anything" to him *after* they had already pulled him off Donald. More directly, in his briefing, Chaney recognizes the officers told him to get off of Donald, and Chaney does not dispute the command was given or argue to the contrary. (Doc. 132 at 8 of 26.) Chaney merely questions which officer gave the command.

Officers Swan, Meyers, and Wadsworth each state that Officer Swan then grabbed Chaney by the arm, and pulled Chaney off Donald. Officers Swan and Meyers subsequently handcuffed Chaney. (Doc. 104-4 at 3 of 5; Doc. 104-5 at 5 of 8; Doc. 132-5 at 4 of 21.)

Officer Meyers states that Chaney initially was not resisting the officers. (Doc. 104-5 at 5 of 8.) But when Officer Swan pulled him off Donald, Chaney started yelling at the officers to get off of Donald. (Doc. 104-5 at 6 of 8.) Officer Swan proceeded to escort Chaney up a hill about 30 feet away from Officer Wadsworth and Donald, where Chaney continued to yell at the officers to let Donald go. (Doc. 104-5 at 7 of 8.)

At some point Chaney threatened Officer Wadsworth by saying he was going to "fuck that dude in the black shirt" up. (Doc. 104-1 at 14 of 19 (referring to Officer Wadsworth).) An officer told Chaney that Officer Wadsworth was a law enforcement officer, and Chaney responded by saying "I don't give a fuck." (Doc. 104-1 at 15 of 19.) Officer Swan also told Chaney his conduct was obstructing a police officer, and Chaney responded saying he didn't "give a fuck." (Doc. 104-3 at 2 of 4.)

Officer Swan states that when Chaney was making verbal threats to Officer Wadsworth, he also was trying to walk towards Officer Wadsworth. (Doc. 104-4

at 5 of 5.)  And Chaney does not dispute that he did try to walk towards Officer Wadsworth.

Officer Wadsworth then directed Officer Meyers to help Officer Swan detain Chaney.  (Doc. 104-5 at 7 of 8.)  When Officer Meyers went up the hill towards Officer Swan and Chaney, he heard Officer Swan tell Chaney to put his hands behind his back because he was under arrest, at which point Officer Meyers assisted Officer Swan to handcuff Chaney.[2]  (Doc. 104-5 at 7 of 8.)

No incident of an acute use of force by any of the officers occurred other than Chaney's assertion that Officers Wadsworth and Swan "jumped" on him. The officers did not take Chaney down to the ground, and there was no violent or physical altercation between Chaney and any of the officers.  (Doc. 104-4 at 3 of 5.)  And Chaney agrees that none of the officers physically struck him during this encounter.  (Doc. 104-1 at 15 of 19.)  The only physical injury Chaney identifies is

---

[2]In his briefing Officer Wadsworth attempts to establish that Chaney admitted he was "pretty hysterical" that night which, in part, justified Chaney's detention.  But Chaney's testimony to which Officer Wadsworth cites establishes that Chaney admitted he was hysterical only after he was already in handcuffs, not before.  Chaney saw multiple officers on Donald holding him down, and he saw an officer hitting Donald's arm.  (Doc. 104-1 at 12 of 19.)  Chaney told the officers several times that Donald suffers from PTSD, that the officers' aggressive conduct towards Donald was exacerbating Donald's condition and agitating him, and that there were other calming procedures they should use.  (*Id*.)  And an officer then told Chaney to turn around and the officer placed Chaney in handcuffs.  (Doc. 104-1 at 13 of 19.)  It was only then that Chaney stated "at that point I was pretty hysterical from what it led up to."  (*Id*.)

a scratch on his neck, but the record does not establish how or when the scratch occurred, and Chaney never sought medical attention for the scratch. (Doc. 104-1 at 17 of 19.)

At some point during the parties' encounter, Officers Meyers and Wadsworth got Donald handcuffed, under control, and held in custody. The record, however, does not clearly describe when that occurred relative to all the other events that occurred during the parties' encounter.

## IV. Discussion

### A. Federal Claims Chaney Concedes

Chaney concedes the federal claims advanced against Defendant City of Ronan Police Department should be dismissed. He also agrees the federal claims advanced against Defendants Aipperspach and Daniel Wadsworth in their official capacities should be dismissed. Finally, Chaney agrees his federal claim asserting a violation of his rights under the Equal Protection Clause of the United States Constitution should be dismissed. Therefore, it is recommended that all of these referenced claims be dismissed.

### B. 42 U.S.C. § 1983

Chaney's remaining federal claims are advanced against all Defendants under 42 U.S.C. § 1983. Section 1983 permits claims under federal law against a

local governmental entity, or a state official or employee, if the plaintiff can establish that the defendant was (1) acting under color of state law, and (2) deprived the plaintiff of a federal right secured by the Constitution or laws of the United States. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Defendants Trevor Wadsworth, Daniel Wadsworth and Kim Aipperspach argue they are entitled to qualified immunity from liability on Chaney's section 1983 claims. Qualified immunity renders individual state actors immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity protects government officials when they "'make reasonable but mistaken judgments,' and '"protects 'all but the plainly incompetent or those who knowingly violate the law.'"" *Messerschmidt v. Millender*, ___ U.S. ___, 132 S. Ct. 1235, 1244-45 (2012) (citations omitted).

Under the qualified immunity analysis the court considers whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the court need not proceed further with its inquiry. *Id*. at 201.

Another independent prong of the immunity analysis requires the court to

10

consider whether the asserted constitutional right was clearly established. *Saucier*, 533 U.S. at 201. A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. 532 U.S. at 202. *See also Acosta v. City of Costa Mesa*, 718 F.3d 800, 824 (9th Cir. 2013). The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 1.    Detentions or Arrests

Defendants moves for summary judgment dismissing Chaney's claims alleging the officers unlawfully detained or arrested him during the officers' encounter with Chaney in violation of his rights under the Fourth Amendment. In response, Chaney argues Officers Wadsworth and Swan unlawfully seized him when they jumped on top of him, and ultimately placed him in handcuffs. The Court disagrees.[3]

It is well-established that a law enforcement officer may briefly detain an

---

[3]Since Chaney also contends Defendant Aipperspach, Daniel Wadsworth, and the City of Ronan are liable for their own conduct which allegedly caused the officers to unlawfully seize Chaney, the Court will consider the conduct of all officers – Officers Wadsworth, Meyers and Swan – even though Officers Swan and Meyers are not named as defendants in this action.

individual and conduct an "investigatory stop" without violating the individual's

Fourth Amendment rights "if the officer's action is supported by reasonable

suspicion to believe that criminal activity may be afoot." *United States v. Valdes-*

*Vega*, 738 F.3d 1074, 1078 (9ᵗʰ Cir. 2013) (quoting *United States v. Arvizu*, 534

U.S. 266, 273 (2002)). *See also Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable

suspicion exists where there is a "particularized and objective basis", or where

"specific articulable facts which, with objective and reasonable inferences, form

the basis for suspecting that the particular person detained is engaged in criminal

activity." *Valdes-Vega*, 738 F.3d at 1078 (citation and quotation omitted), and

*United States v. Colin*, 314 F.3d 439, 442 (9ᵗʰ Cir. 2002) (citation and quotation

omitted). Under the circumstances of the encounter between Chaney and the

Defendant officers, the officers had reasonable suspicion to briefly detain Chaney.

The undisputed evidence establishes that at least Officers Wadsworth and

Swan had objectively reasonable suspicion to believe Chaney was involved in a

physical fight or assault on another man. *See* Mont. Code Ann. § 45-5-201

(offense of assault). The officers were called to respond to what they were all told

was a fight. They observed a larger man on top of a smaller man, with the smaller

man flailing his arms and legs, and yelling or screaming that he was going to kill

everyone. One of the three officers directed Chaney to get off of Donald, but

Chaney failed to comply. Chaney does not genuinely dispute he was directed to get off.

Chaney contends it was not objectively reasonable to suspect he was engaged in an assault because he asserts he was not actually fighting with Donald. Instead, he informed Officer Meyers of Donald's PTSD anxiety attack and Chaney's efforts to calm him down. But significantly, Chaney does not assert either he or Officer Meyers shared that same information with Officers Wadsworth or Swan. Officer Wadsworth, on the other hand, states he did not speak with Officer Meyers when he first arrived at the scene. (Doc. 132-5 at 5 of 21). The parties have not identified any evidence indicating whether Officer Swan received information about Donald's situation from either Chaney or Officer Meyers. Therefore, based on the objective facts known to, or observed by, Officers Wadsworth and Swan, objectively reasonable suspicion existed to believe an assault was in progress, thereby constitutionally permitting the officers to detain Chaney to investigate what was going on between Chaney and Donald.

Chaney also suggests that Officers Wadsworth and Swan's conduct in jumping on top of him exceeded the scope of a permissible *Terry* stop thereby rendering that conduct an unlawful investigatory stop or an unlawful arrest in the absence of probable cause in violation of his Fourth Amendment rights. The

Court disagrees.

Officers may use reasonable force to effect an investigatory detention "to protect themselves and others in potentially dangerous situations." *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995). "It is well settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, [including] stopping them at gunpoint and handcuffing them, are reasonable." *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995). Reasonable force may be used "to neutralize the risk of physical harm[, ... and] the use of force during a stop does not convert the stop into an arrest if it occurs under circumstances justifying fears" of safety. *Id.* (quoting *United States v. Buffington*, 815 F.2d 1292, 1300 (9th Cir. 1987)). Consistent with this principle, "[a] brief, although complete, restriction of liberty, such as handcuffing, during a *Terry* stop is not a de facto arrest[.]" *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1077 (9th Cir. 2009).

Here, having concluded Officers Wadsworth and Swan had reasonable suspicion to believe Chaney may be engaged in an assault against Donald, those officers were entitled to use some level of force to protect Donald. Under the circumstances, the officers' minimal level of force – their conduct in jumping on top of Chaney and Donald – was justified based on the reasonable suspicion

analysis under the Fourth Amendment, and did not convert the detention of Chaney into an arrest for which probable cause was required. The separate issue of whether Officers Wadsworth or Swan used unconstitutionally excessive force in that regard is addressed below.

Chaney argues the officers unlawfully seized him in violation of his Fourth Amendment rights when they placed him in handcuffs after they pulled him off of Donald. Contrary to Chaney's arguement, however, the officers possessed reasonable suspicion to believe that Chaney was obstructing a peace officer at that point in time.

The offense of obstructing a peace officer is defined as follows:

(1) A person commits the offense of obstructing a peace officer or public servant if the person knowingly obstructs, impairs, or hinders the enforcement of the criminal law, the preservation of the peace, or the performance of a governmental function, including service of process.

Mont. Code Ann. § 45-7-302(1). The offense occurs when an individual engages "in conduct under circumstances that make him or her aware that it is highly probable that such conduct will impede the performance of a peace officer's lawful duty[, ... or] hinder the execution of the Officers' duties." *City of Kalispell v. Cameron*, 46 P.3d 46, 47 (Mont. 2002).

After Officer Swan pulled Chaney off of Donald, Officers Wadsworth and Meyers attempted to gain control of Donald and put handcuffs on him. At that

same time, Chaney was yelling at Officer Wadsworth to de-escalate Donald's

PTSD episode and condition, and to calm Donald. Chaney verbally threatened

Officer Wadsworth with an assault, and attempted to walk towards Officer

Wadsworth.[4] Officer Wadsworth then directed Officers Swan and Meyers to

detain Chaney.

Based on all the information and events observed by the three officers, it

was objectively reasonable for the officers to believe that Chaney was obstructing,

hindering or impairing Officer Wadsworth's efforts to detain, handcuff, and hold

Donald in custody while the officers investigated and assessed what was going on

between Chaney and Donald. Consequently, it was constitutionally permissible

for the officers to detain Chaney and place him in handcuffs. Therefore, Officer

---

[4]Chaney asserts he was merely exercising his First Amendment right to freedom of speech and, therefore, the officers could not detain him based only on his verbal comments to the officers. *See Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990) (citing *Houston v. Hill*, 482 U.S. 451, 461 (1987)). But to demonstrate a First Amendment violation a plaintiff must show that the officer's actions deterred or chilled the plaintiff's speech, and that such deterrence was a substantial or motivating factor driving the officer's conduct. *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012). Chaney does not suggest the officers' conduct would chill a person of ordinary firmness from engaging in speech and, significantly, Chaney does not suggested that the suppression and deterrence of his speech was a substantial or motivating factor in the officers' conduct. Instead, as discussed, the officers were motivated by independent objectively reasonable grounds for detaining Chaney for obstructing a peace officer, including Chaney's threats of physical harm combined with his attempts to walk towards Officer Wadsworth.

Wadsworth is entitled to qualified immunity against Chaney's claims of unconstitutional seizures.

## 2.  **Excessive Force**

Defendants move for summary judgment dismissing Chaney's claims alleging the officers used an excessive level of force against Chaney in violation of his Fourth Amendment rights.  The only argument Chaney presents in response is his contention that Officers Wadsworth and Swan's conduct in jumping on top of Chaney constituted the excessive use of force.  Contrary to Chaney's argument, Officers Swan and Wadsworth's conduct was objectively reasonable and constitutionally permissible.[5]

The Fourth Amendment protects against the unreasonable or excessive use of force by a law enforcement officer in physically restraining a citizen.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Excessive force claims must be evaluated "under an objective reasonableness standard."  *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer

---

[5]Again, although Officer Swan is not a named defendant in this action, the Court will analyze the use of force by both Officers Wadsworth and Swan since Chaney alleges Defendants Aipperspach, Daniel Wadsworth, and the City of Ronan are liable for their own conduct which may have caused the excessive use of force against Chaney.

on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The proper inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

In assessing whether the amount of force used was constitutionally reasonable, the court "must balance the extent of the intrusion on the individual's Fourth Amendment rights against the government's interests to determine whether the officer's conduct was objectively reasonable based on the totality of the circumstances." *Espinosa*, 598 F.3d at 537. "Stated another way, [the court] must 'balance the amount of force applied against the need for that force.'" *Bryan v. MacPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)).

This balancing analysis typically involves three steps. *Espinosa*, 598 F.3d at 537. First, the court must "assess the severity [or gravity] of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Espinosa*, 598 F.3d at 537 (quoting *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003)). Thus, a significant factor the court may consider, under the totality of the circumstances, is the "quantum of force" used by the officers. *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010).

Second, the court considers "the government's interests by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." *Espinosa*, 598 F.3d at 537. "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Bryan*, 630 F.3d at 826 (citation and quotation omitted).

Third, the court must then balance the gravity of the force used by the officers on the individual against the government's need for that force "to determine whether the force used was greater than is reasonable under the circumstances." *Espinosa*, 598 F.3d at 537 (citation and quotation omitted).

As the decisional law instructs, the Court begins by assessing the "gravity of the intrusion" on Chaney's Fourth Amendment rights caused by Officers Wadsworth and Swan's conduct in jumping on top of Chaney. The evidence of record neither describes the manner in which, nor quantifies the level of force applied when, Officers Wadsworth and Swan "jumped" on Chaney. Chaney's counsel, without citation to the record, characterizes the officers' actions as a "hog pile" on Chaney and Donald. But Chaney does not identify any acute infliction of force applied by the officers when they jumped on, and he does not identify any

injury that he suffered as a result of the officers' conduct.[6]  Although police

officers need not use the least intrusive force available, the record establishes that

Officers Wadsworth and Swan used a minimal amount of force necessary to

separate Chaney and Donald.  Chaney confirms the officers did not physically

strike, hit or punch him, and there is no evidence the officers, for example,

unnecessarily physically manipulated Chaney's arms or legs to gratuitously inflict

pain upon him.  *See Luchtel v. Hagemann*, 623 F.3d 975, 982 (9th Cir. 2010)

(concluding the absence of these specific uses of force rendered the quantum of

force applied reasonable or minimal).

Turning to the government's countervailing interests, it was, as discussed,

objectively reasonable for Officers Wadsworth and Swan to suspect Chaney was

assaulting Donald.  An assault can be a severe offense, and the severity of an

offense can be sufficient to account for a minimal amount of force used by

officers.  *Luchtel*, 623 F.3d at 980.

As noted, Chaney does not genuinely dispute that he did not comply with an

officer's direction to get off of Donald.  And an individual does not have the right

to resist or to refuse to comply with law enforcement officers' instructions.  *See*

---

[6]As noted, the only injury Chaney asserts he suffered at some point during
all of the events was a scratch on his neck.  But Chaney does not establish when or
how the scratch occurred, or who scratched him.

*Luchtel*, 623 F.3d at 981 (citing *United States v. Willfong*, 274 F.3d 1297, 1301 (9ᵗʰ Cir. 2001)).  Thus, it was objectively reasonable for the officers to use a minimal amount of force to separate the two brothers.

Chaney contends an objective perception of all the facts and information establishes there was absolutely no need for Officers Wadsworth and Swan to apply any force at all because he was calming Donald, not fighting him.  "[W]here there is no need for force, any force used is constitutionally unreasonable." *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1199 (9ᵗʰ Cir. 2000) (citing *P.B. v. Koch*, 96 F.3d 1298, 1303–04 & n. 4 (9ᵗʰ Cir. 1996)), vacated and remanded on other grounds sub nom. *County of Humboldt v. Headwaters Forest Defense*, 534 U.S. 801 (2001).  But Chaney's contention ignores the objective perceptions of Officers Wadsworth and Swan indicating evidence of an assault, the potential harm to Donald, and Chaney's non-compliance with the officers' commands.  Therefore, Chaney's suggestion there was no need for any force is unsupported by the objective facts.

In sum, based on all the facts and information known to Officers Wadsworth and Swan, it was objectively reasonable for those officers to believe that Chaney posed an immediate threat of harm to Donald.  The "most important single element of the [*Graham* factors is] whether the suspect poses an immediate threat to the

safety of the officers or others." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). The circumstances objectively demonstrate that the "dominant motive and essential duty" of the officers at that point was to secure the safety of everyone involved. *Luchtel*, 623 F.3d at 980. Viewing the evidence in the light most favorable to Chaney, the Court concludes that the government's interest in applying force at that moment was relatively significant.

Weighing the gravity of the officers' minimal intrusion on Chaney against the government and the officers' interests and needs in investigating the circumstances, preserving the peace, and preventing harm to Donald, the Court concludes that the government's interests outweighed the gravity of the minimal level of force applied to Chaney. Under the totality of the circumstances, and viewing the evidence in the light most favorable to Chaney, the Court concludes no genuine issue of material fact exists and that, as a matter of law, Officers Wadsworth and Swan's conduct in jumping on Chaney was warranted under the circumstances and was objectively reasonable as a matter of law. *See Luchtel*, 623 F.3d at 980 (affirming summary judgment in favor of defendant on plaintiff's claim of defendant's use of excessive force). No reasonable juror could conclude that Officers Wadsworth and Swan applied an unreasonable amount of force under

the circumstances.[7] "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' [...] violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). And a reviewing court must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Alternatively, even assuming Officers Wadsworth and Swan's minimal degree of force used was unnecessary as argued by Chaney, a reasonable officer in their position would not reasonably understand that what they were doing would violate Chaney's clearly established rights. Chaney has not shown that the officers' use of their bodies in this manner and in these circumstances violated a clearly established constitutional right against the use of force in that manner. *See Luchtel*, 623 F.3d at 983 (concluding the officer was entitled to qualified immunity on excessive force claim based on the absence of a clearly established right). Officer Wadsworth is entitled to qualified immunity against Chaney's claim of the

_____

[7]Absent genuine issues of material facts, and viewing all reasonable inferences of facts in the light most favorable to the non-moving party, summary judgment is properly granted in favor of a moving defendant if no reasonable juror could find from the undisputed facts in favor of the non-moving plaintiff. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901-02 (9th Cir. 2008).

excessive use of force, and the claim should be dismissed.

### 3. Defendants Aipperspach and Daniel Wadsworth

Defendants Aipperspach and Daniel Wadsworth were the Mayor and the Chief of Police for the City of Ronan, respectively, at the time of the events at issue. They move for summary dismissal of Chaney's section 1983 claims against them on the basis of qualified immunity.

Supervisory officials like Aipperspach and Daniel Wadsworth can be held liable under section 1983 if they themselves personally violated a constitutional right. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). A supervisor may be liable:

> if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotation and citation omitted).

A supervisory officer's liability, however, can only be predicated upon a violation of the plaintiff's federal right. It is axiomatic, therefore, that absent an underlying violation of an individual's constitutional rights committed by subordinate officers, supervisory personnel can have no liability for their own personal involvement in the subordinate officers' conduct. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

As discussed above, because Officers Wadsworth, Swan and Meyers did not violate Chaney's Fourth Amendment rights, Chaney's claims against Aipperspach and Daniel Wadsworth based on their personal role in the officers' conduct necessarily fails.

### 4.    City of Ronan - Municipal Liability

The City of Ronan moves for summary judgment dismissing Chaney's 42 U.S.C. § 1983 claims on the grounds that there exists no evidence sufficient to support those claims of liability.

Local governmental entities such as the City of Ronan can be held liable under section 1983 (*Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978)) only if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). But "municipalities are only liable under Section 1983 if there is, at minimum, an underlying constitutional tort." *Johnson v. City of Seattle*, 474 F.3d 634, 638-39 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 691). As discussed, Officers Wadsworth, Meyers and Swan did not violate Chaney's Fourth Amendment rights. Consequently, Chaney's claims against the City of Ronan are necessarily subject to dismissal.

### C.    Claims Under Montana Law

####      1.    Immunity - Wadsworth, Aipperspach and Daniel Wadsworth

Daniel Wadsworth, Trevor Wadsworth, and Aipperspach all move for summary judgment dismissing Chaney's claims predicated on Montana law.  They argue they are immune from individual liability on those claims pursuant to Mont. Code Ann. § 2-9-305(5) because their employing governmental entity, the City of Ronan, is named as a Defendant in this action, and the City acknowledges that Trevor and Daniel Wadsworth, and Aipperspach were each acting in the course and scope of their employment on July 14, 2013.  *Kenyon v. Stillwater County*, 835 P.2d 742, 745 (Mont. 1992), overruled on other grounds by *Heiat v. Eastern Montana College*, 912 P.2d 787, 793 (Mont. 1996).  *See also Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006).

The individual Defendants are immune pursuant to section 2-9-305, and Chaney concedes this point.  Therefore, the individual Defendants' summary judgment motions should be granted in this respect.  The City of Ronan, of course, would remain obligated to pay any judgment that might be entered in favor of Chaney for the conduct of its employees.  Mont. Code. Ann. § 2-9-102.

####      2.    Negligence and Negligence Per Se

The City of Ronan moves for summary judgment dismissing Chaney's

claims of negligence and negligence per se.  It contends Chaney has failed to identify any evidence suggesting either it or its employees breached a legal duty owed to Chaney.

In response, Chaney relies upon the arguments he previously presented in support of his motion for summary judgment with respect to his claims of negligence and negligence per se.  (Doc. 132 at 24 of 26.)  The Findings and Recommendation entered September 1, 2015, recommended that District Judge Donald W. Molloy decline to exercise supplemental jurisdiction over Chaney's claims of negligence and negligence per se.

The only additional argument Chaney presents in support of his negligence claim asserts that his expert witness, Timothy J. Longo, Sr., identifies specific circumstances of the City of Ronan's alleged negligence.[8]  (Doc. 132 at 24 of 26.) Chaney cites to Mr. Longo's statements in paragraphs 137-139 of his expert report.[9]  Those paragraphs set forth Mr. Longo's opinion that the City of Ronan,

---

[8]Significantly, Chaney does not contend that the City of Ronan is vicariously liable for any negligent acts or omissions committed by Officers Wadsworth, Meyers or Swan at the scene of their encounter on July 14, 2013, because he does not argue that any of those individual officers committed any act of negligence.

[9]By Order entered July 15, 2015, the Court granted the City of Ronan's motion in limine to exclude Mr. Longo's opinion as framed in paragraph 137 of his expert report.  (Doc. 147 at 24.)

through the conduct of Defendants Aipperspach and Daniel Wadsworth, failed to provide appropriate training to its law enforcement officers as required by "generally accepted law enforcement practices[,]" and that such failure caused the unlawful use of force against Chaney.  (Doc. 73-1 at 27 of 44.)

The City of Ronan counters that Chaney's claim of negligent training is barred by the public duty doctrine as recognized in Montana.  The public duty doctrine provides that "a governmental entity cannot be held liable for an individual plaintiff's injury resulting from a governmental officer's breach of a duty owed to the general public rather than to the individual plaintiff."  *Eklund v. Trost*, 151 P.3d 870, 878 (Mont. 2006) (quoting *Massee v. Thompson*, 90 P.3d 394, 403 (Mont. 2004)).  A governmental entity may, however, be subject to an actionable duty to a specific plaintiff if the plaintiff can establish that the entity or an officer had a "special relationship" with the plaintiff.  *Gonzales v. City of Bozeman*, 217 P.3d 487, 491 (Mont. 2009).

Chaney argues that a special relationship exception to the public duty doctrine exists under the circumstances of this case.  He premises his argument upon provisions of Montana statutory law and provisions of the "Renewal of Memorandum of Agreement" ("Renewal Agreement") that the City of Ronan entered with the Confederated Salish and Kootenai Tribes of the Flathead Nation.

(Doc. 110 at 9-11 of 33, and Doc. 52-4.)  The purpose of this Renewal Agreement is to provide a framework within which the parties' law enforcement departments could cooperatively administer law enforcement on the Flathead Reservation.  The Renewal Agreement permits Flathead Tribal Officers to make use of City of Ronan police officers, but only if the City of Ronan officers "have met the necessary requirements for certification as law enforcement officers of the respective state, county, and city jurisdictions and who have been certified by the respective jurisdiction[.]"  (Doc. 52-4 at 5.)

Chaney takes the position that because the Renewal Agreement obligates the City of Ronan to provide certified officers to assist tribal officers, and to protect tribal members such as Chaney against the use of non-tribal police officers who are not properly certified, the requisite special relationship existed between the City and Chaney.

Chaney's arguments relative to the special relationship exception, however, necessarily implicate the same issues pertaining to the construction of the Montana statutory laws governing the training and certification requirements applicable to reserve and peace officers in Montana over which the undersigned previously recommended Judge Molloy refrain from exercising supplemental jurisdiction. Chaney's arguments raise a novel issue under the Montana public duty doctrine as

to whether the City of Ronan's obligation under Montana law and the Renewal Agreement – the asserted obligation to provide certified officers to assist with law enforcement against tribal members – establishes a special relationship exception to the public duty doctrine.

To reiterate, a federal court has discretion to decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law[.]"  28 U.S.C. § 1367(c)(3).  Pursuant to the discussion in the Findings and Recommendation entered September 1, 2015, it is recommended that Judge Molloy refrain from exercising supplemental jurisdiction over Chaney's claims of negligent training asserted against the City of Ronan.[10]

### 3.    **Montana Constitution**

Chaney's Amended Complaint alleges Defendants are liable for violations of certain provisions of the Montana Constitution.  He alleges Defendants violated his rights of individual privacy, to be free from unreasonable searches and seizures, and against the deprivation of life, liberty or property without due

---

[10]This recommendation to decline jurisdiction is limited to Chaney's negligent training claim as argued in Chaney's response brief because it implicates Montana statutory law governing reserve and peace officers.  Some of Chaney's other claims of negligence plead in his Amended Complaint might not implicate those statutory laws.  But, again, Chaney did not present arguments supporting any other theory of negligence.  In particular, Chaney did not argue that Officers Wadsworth, Meyers or Swan committed an act of negligence at the scene of their encounter on July 14, 2013.

process of law as protected by the Montana Constitution, art. II, §§ 10, 11 and 17, respectively.

The City of Ronan moves for summary judgment dismissing all of Chaney's claims under the Montana Constitution. In response, Chaney does not present arguments asserting Defendants are liable for violating his constitutional rights to due process. Therefore, Chaney's claim of due process should be dismissed.

Chaney argues Officers Meyers, Wadsworth and Swan unconstitutionally seized him and used excessive force against him in violation of his rights to privacy and against unreasonable seizure protected under the Montana Constitution. His arguments in that regard are identical to his arguments asserting Defendants violated his rights under the Fourth Amendment to the United States Constitution.

Where a provision of the Montana Constitution mirrors a provision of the United States Constitution, the Montana Supreme Court looks to the decisional law of the federal courts for guidance on developing the applicable analysis under the same provision of the Montana Constitution. *Quigg v. Slaughter*, 154 P.3d 1217, 1221 (Mont. 2007). Accordingly, a court may apply federal jurisprudence to a comparable provision of the Montana Constitution. *Kafka v. Montana Department of Fish, Wildlife and Parks*, 201 P.3d 8, 50 (2008).

Pursuant to the analysis of Chaney's Fourth Amendment claims against Officers Wadsworth, Meyers and Swan, Mayor Aipperspach and Chief Daniel Wadsworth, the Court concludes Defendants did not violate Chaney's Fourth Amendment rights. Therefore, Chaney's unlawful seizure claims under the Montana Constitution, art. II, § 11 should similarly be dismissed.

Chaney further argues Officers Wadsworth, Meyers and Swan violated his right to privacy under the Montana Constitution, art. II, § 10 when they seized him without either reasonable suspicion or probable cause. For the reasons discussed, the Court concludes that claim fails on its merits.

Where a search or seizure by a law enforcement officer is lawful, i.e. supported by probable cause or reasonable suspicion, the right to privacy under article II, § 10 is not implicated and cannot be relied upon to invalidate the seizure. *See State v. Pierce*, 116 P.3d 817, 820-21 (Mont. 2005), and *State v. Morris*, 749 P.2d 1379, 1383-84 (Mont. 1988).

As discussed above, the Court has found that Officers Wadsworth, Swan and Meyers had reasonable suspicion to detain Chaney first for a possible assault, and later for obstructing a peace officer. Therefore, the circumstances of this case do not implicate the right to privacy under article II, § 10 of the Montana Constitution. The claim is properly dismissed.

### 4. Assault and Battery

The City of Ronan moves for summary judgment dismissing Chaney's claim of assault and battery. In response, Chaney argues Officers Wadsworth and Swan committed an assault and battery on him when they employed physical force to separate him from Donald. The City has the better argument.

Under Montana law, a police officer "is not liable for assault and battery provided he uses no more force than is reasonably necessary under the circumstance to properly perform his official duties." *Luciano v. Ren*, 589 P.2d 1005, 1008 (Mont. 1979). As discussed, Officers Wadsworth and Swan did not use more force than was reasonably necessary to detain Chaney. The Court has not previously addressed Officer Swan's conduct in pulling Chaney off of Donald, but there exist no facts in the record describing Officer Swan's conduct beyond the mere undisputed fact that he grabbed Chaney's arm, without incident, and pulled Chaney off. Therefore, the Court finds that no reasonable juror could conclude that Officer Swan applied an unreasonable amount of force to pull Chaney off under the circumstances, and Chaney's assault and battery claims should be dismissed.

### 5. Punitive Damages

In the absence of a viable theory of liability resulting in an award of actual

damages against a specific defendant, a plaintiff is not entitled to recover punitive damages, and the claim should be dismissed. *Peterson v. Eichhorn*, 189 P.3d 615, 624 (Mont. 2008), and *Doll v. Major Muffler Centers, Inc.*, 687 P.2d 48, 55 (Mont. 1984). Because the Court recommends dismissal of all of Chaney's state law claims, his claim for punitive damages is also subject to dismissal.

## V.    Conclusion

Based on the foregoing, pursuant to 28 U.S.C. § 1367(c)(3), IT IS RECOMMENDED that the District Court decline to exercise supplemental jurisdiction over Chaney's claims of negligence asserted against the City of Ronan predicated upon its failure to properly train its officers, thereby invoking the public duty doctrine, be DISMISSED without prejudice on the basis the claims raise novel issues of Montana law. IT IS FURTHER RECOMMENDED that Defendants' summary judgment motions be GRANTED in all other respects, and that the balance of Chaney's claims be DISMISSED.[11]

DATED this 24th day of September, 2015.

Jeremiah C. Lynch
United States Magistrate Judge

---

[11]Pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel on or before **October 2, 2015**, and any response by the opposing party must be filed on or before **October 8, 2015.** *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full period of time set forth in 28 U.S.C. § 636(b)(1) within which to file objections).